UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSE GUADALUPE PEREZ-FARIAS, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> GLOBAL HORIZONS, INC., et al., <br><br> Defendants. | NO. CV-05-3061-MWL <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER PROHIBITING DISCOVERY OF PLAINTIFFS' IMMIGRATION STATUS |

Before the Court is Plaintiff's motion seeking a protective order prohibiting Defendants from inquiring into Plaintiffs' immigration status or eligibility for employment.  (Ct. Rec. 41).

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs filed this class action on July 12, 2005, alleging they were denied or terminated from agricultural employment in 2004, because Defendants systematically and intentionally preferred H-2A laborers from Thailand, in violation of federal and state law.  (Ct. Rec. 1).  Plaintiffs seek declaratory and injunctive relief as well as damages.  (Ct. Rec. 1).

On November 28, 2005, during the depositions of the Plaintiffs, an issue arose regarding inquiry into the immigration status of the Plaintiffs.  The parties requested a telephonic

1

hearing with the Court, at which time Plaintiffs made an oral motion for a protective order to prohibit Defendants from making discovery requests regarding the immigration status of Plaintiffs. (Ct. Rec. 41). The Court requested the parties proceed with the depositions without inquiry regarding the immigration status of the Plaintiffs, but specifically reserved ruling on this issue pending briefing on the issue by both parties. Plaintiff filed a memorandum in support of this motion on November 30, 2005. (Ct. Rec. 37). Defendants filed a memorandum in opposition to Plaintiff's motion for a protective order on December 7, 2005. (Ct. Rec. 42). Plaintiff filed a reply memorandum on December 12, 2005. (Ct. Rec. 45).

**PLAINTIFFS' MOVING ARGUMENTS**

Plaintiffs contend that this Court should issue a protective order prohibiting Defendants from using the discovery process to inquire into Plaintiffs' immigration status or eligibility for employment. (Ct. Rec. 37). Plaintiffs argue that inquiry into their immigration status places an undue burden on the Plaintiffs, that is outweighed by any interest asserted by Defendants, and is irrelevant to a determination for class certifications matters.

Plaintiffs assert that their position on discovery in this case is supported by the 2004 Ninth Circuit case *Rivera v. NIBCO, Inc.*, 364 F.3d 1057 (9th Cir. 2004). In *Rivera*, the Ninth Circuit held that a magistrate judge's grant of a protective order prohibiting defendants from using the discovery process to inquire into plaintiffs' immigration status was justified "because the substantial and particularized harm of the discovery – the chilling effect that the disclosure of plaintiffs' immigration

status could have upon their ability to effectuate their rights – outweighed [defendants'] interests in obtaining the information." *Rivera*, 364 F.3d at 1064.  The Court found that "[t]he chilling effect such discovery could have on the bringing of civil rights actions unacceptably burdens the public interest." *Id*. at 1065. Plaintiffs argue that the Court should reach a similar result here.

Plaintiffs contend that, as in *Rivera*, the discovery Defendants seek is at the beginning of the litigation process.  In addition, similarly, Defendants are unable to articulate any interest in discovering the immigration status of Plaintiffs at this stage in the litigation, as it is not relevant to class certification issues.  (Ct. Rec. 37, pp. 4-5).

## **DEFENDANTS' OPPOSITION ARGUMENTS**

Defendants respond that they must be allowed to inquire into the named Plaintiffs' eligibility to work and into the number of members of the alleged subclasses who shared their work status, whatever it may be.  (Ct. Rec. 42, p. 2).  They claim that authorized and unauthorized workers present different legal issues, where back pay is concerned, and no one individual can represent a class consisting of both categories of workers on such claims due to the typicality requirement of Fed. R. Civ. P. 23(a)(3).  (Ct. Rec. 42, p. 2).  Defendants assert that the requested discovery relates directly to the proper definition of any classes that should be certified on the back-pay claims, to the named Plaintiffs' typicality as representatives of the classes seeking relief, and to whether any of these classes are sufficiently numerous.  (*Id.*)

In support of their argument, Defendants rely on the 2002 United States Supreme Court case *Hoffman Plastic Compounds, Inc. V. NLRB*, 535 U.S. 137 (2002) ("*Hoffman*"). *Hoffman* held that an undocumented alien, who has never been legally authorized to work in the United States, cannot be awarded back-pay for work that has not been performed. *Hoffman*, 535 U.S. at 149-150. Accordingly, Defendants argue that, on the back-pay claims, separate classes are required for legal and illegal workers. (Ct. Rec. 42, p. 5). They claim that, without discovery of the work-authorization status of the named Plaintiffs, they would not know which group, legal or illegal workers, they are entitled to represent. (*Id*.).

Defendants also distinguished the instant case from *Rivera*. (Ct. Rec. 42, pp. 5-7). They contend that *Rivera* did not hold that Defendants are **never** permitted discovery into immigration status, only **early** discovery into immigration status in the circumstances of that particular case. Defendants indicate that Plaintiffs have suggested no good reason why discovery into immigration status should be deferred until later (nor have they indicated when they feel it would be appropriate). Defendants also assert that in *Rivera* there was no claim of discriminatory denial of employment as there is in this case. Finally, Defendants indicate that *Rivera* was not a class action case and; therefore, there was no questions presented as to how a class should be defined, whether it was sufficiently numerous and whether the named plaintiffs were typical of such a class.

Defendants assert that the problem, here, is that Plaintiffs seek to represent a class consisting of both legal and illegal workers. (Ct. Rec. 42, p. 9). They argue that, on the failure to

provide work and wrongful termination claims, each individual Plaintiff can represent only one group or the other, and, without discovery pertaining to immigration status, there would be no way to tell which group they may represent. (Ct. Rec. 42, p. 9). Thus, Defendants contend that such discovery is needed on the class certification issue, as well as the merits of Plaintiffs' claims.

**PLAINTIFFS' RESPONSE**

Plaintiffs respond arguing that Plaintiffs' immigration status is not relevant to the determination of class certification or liability for the federal and state law claims alleged. (Ct. Rec. 45).

Plaintiffs contend that Defendants failed to present any authority to support its contention that Plaintiffs may represent a class consisting only of documented or undocumented workers, but not both. (Ct. Rec. 45, p. 2). They assert that information regarding Plaintiffs' immigration status is not necessary to determine whether their claims are typical of the class they seek to represent, whether they are adequate representatives, or to assess whether the subclasses alleged will meet the numerosity requirement. (Ct. Rec. 45, p. 5). As to typicality, Plaintiffs allege that all representative Plaintiffs and class members, whether documented or undocumented, suffered the same or similar injury, arising from the same course of conduct by Defendants (unlawfully denied employment or unlawfully terminated). (Ct. Rec. 45, pp. 6-12). They indicate that, while the amount of damages Plaintiffs and class members are entitled to may vary, Plaintiffs' claims are still typical of the class members they

seek to represent. With regard to adequacy of representation, Plaintiffs assert that the representative parties do not have conflicts with other class members, and the possible creation of potential conflicts by a court's determination on the appropriate measure of damages, at a later point in the case, is not a basis to deny certification. (Ct. Rec. 45, pp. 12-13). They argue that the fact that some class members could be entitled to a greater amount of damages based on their immigration status would not create a conflict, and, even if such a conflict developed, the Court could create additional subclasses. Regarding numerosity, Plaintiffs assert that there is no conflict or other basis that would require classes to be segregated based on immigration status; thus, the numerosity requirement has been met. (Ct. Rec. 45, pp. 13-14).

Plaintiffs again argue that, consistent with *Rivera*, the Court should not allow inquiry into Plaintiffs' immigration status. (Ct. Rec. 45, pp. 14-19). Plaintiffs indicate that further inquiry into Plaintiffs' and class members' immigration status would only be appropriate when liability is established and only if this Court subsequently determines that back-pay awards should be limited based on immigration status (*Hoffman*). In that case, Plaintiffs claim that the Court should still structure the proceedings to minimize the disclosure by appointing a special master or limiting the disclosure to only those class members affirmatively seeking a back-pay remedy. (Ct. Rec. 45, pp. 15-16).

///

///

Plaintiffs also argue that *Hoffman* does not make immigration status an element of Plaintiffs' employment discrimination cause of action. (Ct. Rec. 45, p. 16). As noted by Plaintiffs, to do so would be inconsistent with the central purpose of federal discrimination laws because, if Plaintiffs were required to establish that they were authorized to work as an element of their claim, only documented workers would be able to pursue employment discrimination claims.

Plaintiffs argue that their immigration status is not relevant to class certification issues; namely, typicality, adequacy of representation, or numerosity. Since this Court has narrowed the scope of current discovery to liability issues, not damages, Plaintiffs assert that Defendants should be prohibited from inquiring into Plaintiffs' immigration status or eligibility for employment at this time.

## DISCUSSION

### Scope Of Discovery

The purpose of discovery is to make trial "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible," *United States v. Procter & Gamble*, 356 U.S. 677, 683, 78 S.Ct. 983, 987 (1958), and to narrow and clarify the issues in dispute, *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 388 (1947).

Fed. R. Civ. P. 26(b) establishes the scope of discovery and states in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For

1  good cause, the court may order discovery of any matter
relevant to the subject matter involved in the action.
2  Relevant information need not be admissible at trial if
the discovery appears reasonably calculated to lead to the
3  discovery of admissible evidence.

4 "The party who resists discovery has the burden to show that

5 discovery should not be allowed, and has the burden of clarifying,

6 explaining, and supporting its objections." *Oakes v. Halvorsen*

7 *Marine Ltd.*, 179 F.R.D 281, 283 (C.D. Cal. 1998); *Nestle Foods*

8 *Corp. v. Aetna Casualty & Surety Co.*, 135 F.R.D. 101, 104 (D. N.J.

9 1990).

10                         **Protective Orders**

11      For "good cause shown," a court may issue a protective order

12 that "discovery may be had only on specified terms and

13 conditions." Fed. R. Civ. P. 26(c)(2). Fed. R. Civ. P. 26(c) is

14 a safeguard to protect parties and witnesses in view of Fed. R.

15 Civ. P. 26(b)'s broad discovery rights. *United States v. Columbia*

16 *Broadcasting System, Inc.*, 666 F.2d 364, 368-369 (9th Cir. 1982).

17 Under Fed. R. Civ. P. 26(c), this Court may issue protective

18 orders for persons subject to a subpoena and "for good cause shown

19 . . . may make any order which justice requires to protect a party

20 or person from annoyance, embarrassment, oppression, or undue

21 burden or expense," including:

22      1.   Prohibiting disclosure or discovery;

23      2.   Conditioning disclosure or discovery on specified terms;

24      3.   Preventing inquiring into certain matters; or

25      4.   Limiting the scope of disclosure or discovery to certain

26           matters.

27      To obtain a protective order, the party resisting discovery

28 or seeking limitations must show "good cause" for its issuance.

Fed. R. Civ. P. 26(c); *Jepson, Inc. v. Makita Elec. Works, Ltd*, 30 F.3d 854, 858 (7th Cir. 1994). Generally, a party seeking a protective order has a "heavy burden" to show why discovery should be denied and a strong showing is required before a party will be denied the right to take a deposition. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). "If the motion for protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or other person provide or permit discovery." Fed. R. Civ. P. 26(c).

### **Analysis**

Plaintiffs' position on discovery in this case is supported by *Rivera*. As noted above, in *Rivera*, the Ninth Circuit held that a magistrate judge's protective order prohibiting defendants from using the discovery process to inquire into plaintiffs' immigration status was justified "because the substantial and particularized harm of the discovery – the chilling effect that the disclosure of plaintiffs' immigration status could have upon their ability to effectuate their rights – outweighed [defendants'] interests in obtaining the information." *Rivera*, 364 F.3d at 1064. That same harm or chilling effect is apparent in the case at hand. As in *Rivera*, undocumented workers would be deterred from bringing suit out of fear of deportation or criminal prosecution, and documented workers may be chilled by fear that their immigration status would be changed or that their status would reveal the immigration problems of their family or friends. *Rivera*, 364 F.3d at 1065.

///

1  Moreover, this Court has narrowed the scope of current
2  discovery to issues regarding liability, not damages.  (Ct. Rec.
3  36).  The Court agrees with Plaintiffs that further inquiry into
4  Plaintiffs' and class members' immigration status would only be
5  appropriate if liability is established and only in regards to
6  claims for damages related to back-pay.  *See*, *Hoffman*, 535 U.S. at
7  137.

8  As Defendants argue, *Hoffman* stands for the proposition that
9  an undocumented alien, who has never been legally authorized to
10 work in the United States, cannot be awarded back-pay for work
11 that has not been performed.  *Hoffman*, 535 U.S. at 149-150.
12 Accordingly, Defendants argue that, on the back-pay claims,
13 separate classes are required for legal and illegal workers.  (Ct.
14 Rec. 42, p. 5).  They claim that, without discovery of the work-
15 authorization status of the named Plaintiffs, they would not know
16 which group, legal or illegal workers, they are entitled to
17 represent.  (Ct. Rec. 42, p. 5).

18 However, as noted by Plaintiffs, *Hoffman* does not make
19 immigration status an element of Plaintiffs' employment
20 discrimination cause of action because to do so would be
21 inconsistent with the central purpose of federal discrimination
22 laws.  (Ct. Rec. 45, p. 16).  If Plaintiffs were required to
23 establish that they were authorized to work as an element of their
24 claim, only documented workers would be able to pursue employment
25 discrimination claims.

26 Plaintiffs' immigration status is additionally not relevant
27 to class certification issues; namely, typicality, adequacy of
28 representation, or numerosity.  As to typicality, Plaintiffs

10

1 allege that all representative Plaintiffs and class members,
2 whether documented or undocumented, suffered the same or similar
3 injury, arising from the same course of conduct by Defendants
4 (unlawfully denied employment or unlawfully terminated).  (Ct.
5 Rec. 45, pp. 6-12).  They indicate that, while the amount of
6 damages Plaintiffs and class members are entitled to may vary,
7 Plaintiffs' claims are still typical of the class members they
8 seek to represent.  With regard to adequacy of representation,
9 Plaintiffs assert that the representative parties do not have
10 conflicts with other class members.  (Ct. Rec. 45, pp. 12-13).
11 They argue that the fact that some class members could be entitled
12 to a greater amount of damages based on their immigration status
13 would not create a conflict, and, even if such a conflict
14 developed, the Court could create additional subclasses at that
15 later time.  Regarding numerosity, Plaintiffs assert that there is
16 no conflict or other basis that would require classes to be
17 segregated based on immigration status; thus, the numerosity
18 requirement has also been met.  (Ct. Rec. 45, pp. 13-14).

19     Without specifically addressing these issues as they pertain
20 to class certification, case law does indicate that whether a
21 plaintiff will be successful in proving damages is immaterial at
22 this stage of the proceeding and the matter should be evaluated
23 only in terms of Plaintiffs' claims as to liability.  *See*,
24 *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th
25 Cir. 1984); *Quellette v. International Paper Co.*, 86 F.R.D. 476,
26 480 (D. Vt. 1980); *Sanders v. Faraday Laboratories, Inc.*, 82
27 F.R.D. 99, 101 (E.D. N.Y. 1979).  Therefore, it appears to this
28 Court that an inquiry into Plaintiffs' immigration status for

purposes of class certification is immaterial and unnecessary. *Id*.

Plaintiffs, as the party seeking to obtain the protective order, must show "good cause" for its issuance. Fed. R. Civ. P. 26(c); *Jepson,* 30 F.3d at 858. As the party seeking the protective order, Plaintiffs have a "heavy burden" to show why discovery should be limited, and a strong showing is required before the Court will deny Defendants' privilege to inquire into Plaintiffs' immigration status. *Blankenship*, 519 F.2d at 429. For good cause shown, this Court may issue a protective order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c).

At this stage in the case, where discovery has been limited to issues regarding only liability, Plaintiffs have satisfied their burden and have displayed good cause for the issuance of a protective order to prohibit Defendants from inquiring into Plaintiffs' immigration status or eligibility for employment. However, this issue may be revisited at a later date when the scope of discovery is broadened to include issues as to damages.

### CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiffs' motion for a protective order prohibiting Defendants from inquiring into Plaintiffs' immigration status or eligibility for employment at this stage in the discovery process. (**Ct. Rec. 41**).

If it appears at some later juncture that such discovery would be relevant, and more relevant than harmful, Defendants may seek leave to discover information relating to Plaintiffs' immigration status at that time.

The District Court Executive is directed to enter this order and forward copies to counsel for Plaintiffs and Defendants.

IT IS SO ORDERED.

DATED this  4th  day of January, 2006.

                                              S/ Michael W. Leavitt
                                                MICHAEL W. LEAVITT
                                    UNITED STATES MAGISTRATE JUDGE