UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSE GUADALUPE PEREZ-FARIAS, et al., | ) ) NO. CV-05-3061-AAM |
| Plaintiffs, | ) ) ORDER ) |
| v. | ) ) |
| GLOBAL HORIZONS, INC., et al., | ) ) |
| Defendants. | ) ) |
| _____ | ) |

On May 25, 2007, Plaintiffs filed motions for partial summary judgment claiming that Defendants violated FCLA, AWPA and Washington Wage Payment law (Ct. Rec. 465) and that Defendants Green Acre Farms, Inc., and Valley Fruit Orchards, LLC, are liable for violations of AWPA and FLCA (Ct. Rec. 459).  The motions were noted for hearing, with oral argument, on June 28, 2007.  However, on June 1, 2007, the Court granted Defendants' motion to reset the hearing date on Plaintiffs' motions for partial summary judgment. (Ct. Rec. 490).  The Court reset the hearing date for July 24, 2007, but explicitly stated that Defendants must comply with the Court's local rules with respect to timely filing responsive memorandums.  (Ct. Rec. 490).  Defendants did not request additional time in which to respond to Plaintiffs' motions.  (Ct. Rec. 482).  No Defendant filed a timely response to Plaintiffs' motions for partial summary judgment in this matter.  In fact, to

ORDER - 1

date, the Court has received no response to Plaintiffs' motions for partial summary judgment from any Defendant. Accordingly, all Defendants are in default with respect to Plaintiffs' motions for partial summary judgment.

In addition, on June 22, 2007, Plaintiffs filed a motion, pursuant to Fed. R. Civ P. 39(a), to strike Defendants' jury demand with respect to Plaintiffs' AWPA and FLCA summary judgment claims. (Ct. Rec. 498). Plaintiffs moved for a Court determination of statutory damages under FLCA for their summary judgment claims. (Ct. Rec. 498). Again, no Defendant filed a timely response to Plaintiffs' June 22, 2007 motion. All Defendants are additionally in default with regard to this motion.

As stated by this Court in numerous previous orders, Local Rule 7.1(h)(5) holds that "[a] failure to timely file a memorandum of points and authorities in support of or in opposition to any motion may be considered by the Court as consent on the part of the party failing to file such memorandum to the entry of an Order adverse to the party in default." In addition, pursuant to Local Rule 56.1(d), the failure to file a statement of specific facts in opposition to a motion for summary judgment allows the Court to assume the facts as claimed by the moving party exist without controversy.

Based on the lack of a timely response to the instant motions (Ct. Rec. 459, 465 and 498) by any Defendant, and pursuant to this Court's authority under Local Rule 7.1(h)(3), **IT IS HEREBY ORDERED** that the hearing date of July 24, 2007, is **VACATED**. The Court shall address these motions without oral presentation.

/ / /

ORDER - 2

## SANCTIONS

Despite several orders issued by this Court requiring Defendants Global Horizons, Inc., Mordechai Orian and Jane Doe Orian to produce discovery and pay sanctions, these defendants have repeatedly failed to respond as directed.[1]

Following the April 17, 2007 hearing on Plaintiffs' motion for contempt and sanctions, the Court issued an order for Defendants to comply with this Court's previous orders and produce all documents previously ordered no later than the close of business on April 23, 2007. (Ct. Rec. 404). Defendants were advised that their failure to comply in this manner would result in daily sanctions of $500.00 until they fully complied with the Court's order. (Ct. Rec. 404). Despite this warning, Attorney for Defendants, Mr. Shiner, indicated in a declaration on May 14, 2007, that Defendants had still not produced all previously ordered discovery.[2] (Ct. Rec. 452). On May 18, 2007, based on the admitted lack of compliance by Defendants, the Court ordered sanctions against Defendants in the amount of $12,500.00, calculated at $500.00 per day for each calendar day from April 23, 2007 to the date of that order. (Ct. Rec. 458). In addition, the Court warned that Defendants' continued failure to comply with this Court's orders would result in continued monetary sanctions, in the amount of $500.00 a day, for each calender day, until there

---

[1] Defendants have failed to fully comply with seven separate orders of this Court regarding the production of discovery. (Ct. Rec. 274; Ct. Rec. 298; Ct. Rec. 329; Ct. Rec. 351; Ct. Rec. 363; Ct. Rec. 404; Ct. Rec. 458).

[2] Counsel for Defendants admitted that they had still not "turned over" the emails which had been ordered to be produced. (Ct. Rec. 452, pp. 8-9).

ORDER - 3

1  was full compliance, and could result in other sanctions as

2  determined by the Court.  (Ct. Rec. 458).  Defendants were

3  forewarned that "continued noncompliance with this Court's orders

4  may result in case dispositive sanctions."  (Ct. Rec. 458, p. 8).

5       The Court ordered counsel for Plaintiffs and counsel for

6  Defendants to meet and confer and file a statement that provides

7  an outline of what items have not been produced as previously

8  ordered by the Court.  (Ct. Rec. 458).  Plaintiffs filed a timely

9  statement on May 29, 2007 (Ct. Rec. 472), and Defendants filed an

10 untimely statement on May 31, 2007 (Ct. Rec. 486).

11      Plaintiffs' statement indicates that, in addition to not

12 paying the Court ordered costs to Plaintiffs, Defendants had still

13 not provided complete and unredacted email and had not provided

14 all communication with Holt, Schwartz, Gonnene and the recruitment

15 agencies.  (Ct. Rec. 472; Ct. Rec. 473, p. 5).  Plaintiffs

16 additionally asserted that Defendants had still not provided

17 supplemental responses with respect to Defendants' violations of

18 AWPA and H-2A, the documentation related to Bruce Schwartz and

19 Taft Farms was incomplete, and Defendants had provided no contract

20 for services with James Holt and no contracts for services with

21 Amnon Gonnene for 2003 and 2004.  (Ct. Rec. 472).

22      Defendants untimely statement admits that Defendants had not

23 supplemented responses to an interrogatory request and request for

24 production as ordered by the Court.  (Ct. Rec. 486, p. 5).

25 Counsel for Defendants indicated that his goal was to have those

26 items completed by June 1, 2007, but it did not appear likely that

27 he would reach that goal.  (Ct. Rec. 486, pp. 5-6).  It was

28 further admitted that Defendants had not produced email between

ORDER - 4

Ms. Tubchumpol and recruiting agencies.  (Ct. Rec. 486, p. 8).
Despite this Court's repeated orders for Defendants to produce all
relevant email, counsel for Defendants indicated that "Global
would endeavor, in short order, to look for and produce all of
said relevant email." (Ct. Rec. 486, p. 8).  Defendants asserted
that they had delivered all documents related to Taft Farms and
Bruce Schwartz on May 31, 2007, they had produced all email
regarding Holt, Schwartz, and Gonnene (with certain redactions),
and there was no contract for services with Holt, nor any
contracts for services in 2003 and 2004 with Gonnene, to be
produced.

        The statements of the parties reveal that, despite this
Court's order for Defendants to produce all documents previously
ordered no later than the close of business on April 23, 2007, in
the face of daily monetary sanctions (Ct. Rec. 404), Defendants
have still not fully complied with this Court's orders to produce
all discovery and had not complied with this Court's orders to pay
Plaintiffs' costs of bringing prior discovery motions.

        On June 8 and June 11, 2007, the Court received declarations
from Plaintiffs' counsel (Ct. Rec. 493-495), as well as a
declaration from Mr. Shiner (Ct. Rec. 496), that reveal that there
has been continued difficulty with Defendants' ability to comply
with this Court's orders.  Despite the continued imposition of
monetary sanctions, the Court has received no information since
that time regarding Defendants' compliance.

        On June 1, 2007, the Court also received a declaration of
Mordechai Orian which stated that Defendants refused to pay to the
///

ORDER - 5

1  Court the monetary sanctions imposed for Defendants' continued

2  refusal to comply with the Court's orders.  (Ct. Rec. 491).

3      Where it is determined that counsel or a party has acted

4  willfully or in bad faith in failing to comply with rules of

5  discovery or with Court orders enforcing the rules or in flagrant

6  disregard of those rules or orders, it is within the discretion of

7  the Court to dismiss the action or to render judgment by default

8  against the party responsible for noncompliance.  Fed. R. Civ. P.

9  37(b).  The Court will impose a default judgment as a sanction

10  when a party's violations are due to the "willfulness, bad faith,

11  or fault" of the party, and where lesser sanctions are considered

12  by the Court to be inadequate.  *Hyde & Drath v. Baker*, 24 F.3d

13  1162, 1167 (9th Cir. 1994) (citing *Fjelstad v. Am. Honda Motor

14  Co.*, 762 F.2d 1334, 1341 (9th Cir. 1985)); *United Artists Corp. v.

15  La Cage Aux Folles, Inc.,* 771 F.2d 1265, 1270-71 (9th Cir. 1985).

16  "Disobedient conduct not shown to be outside the control of the

17  litigant is sufficient to demonstrate willfulness, bad faith, or

18  fault."  *Hyde & Drath,* 24 F.3d at 1166.

19      "Litigants who are willful in halting the discovery process

20  act in opposition to the authority of the court and cause

21  impermissible prejudice to their opponents.  It is even more

22  important to note, in this era of crowded dockets, that they also

23  deprive other litigants of an opportunity to use the courts as a

24  serious dispute-settlement mechanism . . . .  As the Supreme Court

25  stated in upholding a dismissal for failure to comply with a

26  discovery order, [although] it might well be that these

27  [litigants] would faithfully comply with all future discovery

28  orders entered by the District Court in this case . . . [if the

ORDER - 6

order of dismissal were overturned] other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts." *G-K Properties v. Redevelopment Agency of City of San Jose*, 577 F.2d 645, 647-648 (9th Cir. 1978) (quoting *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

There is no dispute in this case concerning Defendants' failure to fully comply with the Court's repeated orders regarding discovery. It is undisputed that Defendants have not produced all discovery as ordered by the Court in the context of seven separate discovery orders. (Ct. Rec. 274; Ct. Rec. 298; Ct. Rec. 329; Ct. Rec. 351; Ct. Rec. 363; Ct. Rec. 404; Ct. Rec. 458). Defendants have provided no valid basis to persuade this Court that circumstances outside Defendants' control have caused their repeated transgressions. Furthermore, the Court has imposed lesser sanctions, with warnings of greater sanctions, in an attempt to achieve Defendants' compliance. As noted above, these lesser sanctions have had no effect with respect to garnering Defendants' full compliance. Defendants' actions in this case are unacceptable.

While the Court has considered issuing case dispositive sanctions against Defendants Global Horizons, Inc., Mordechai Orian and Jane Doe Orian for their continued refusal to obey this Court's orders with respect to discovery, the Court has instead decided to merely address Plaintiffs' motions for partial summary judgment and for statutory damages, in light of Defendants' failure to oppose said motions.

1    However, Defendants Global Horizons, Inc., and Mordechai
2    Orian are compelled to comply with the May 18, 2007 order of the
3    Court regarding monetary sanctions.  (Ct. Rec. 458).  Although,
4    Defendant Mordechai Orian stated on June 1, 2007, that Defendants
5    refused to pay the monetary sanctions imposed by the Court for
6    Defendants' continued refusal to comply with the Court's orders
7    (Ct. Rec. 491), that baseless refusal is unacceptable.

8    **IT IS HEREBY ORDERED** that Defendants Global Horizons, Inc.,
9    and Mordechai Orian, shall pay to the Court the monetary sanctions
10   previously imposed, in the amount of **$12,500.00,** as well as the
11   additional amount of **$27,000.00,** calculated at $500.00 per day for
12   each calendar day since the initial imposition of sanctions to the
13   date of this order, for Defendants' continued refusal to comply
14   with the Court's orders.  **A check payable to the United States**
15   **District Court, Eastern District of Washington, from Defendants**
16   **Global Horizons, Inc., and Mordechai Orian, in the amount of**
17   **$39,500.00 is due immediately**.  Moreover, monetary sanctions, in
18   the amount of $500.00 a day, for each calender day, shall continue
19   until Defendants provide full payment to the Court.

20   Should Defendants fail to make payment to the Court in the
21   above amount, Defendant Mordechai Orian shall appear before the
22   Court on July 24, 2007 at 2:00 p.m., to face the charge of
23   criminal contempt pursuant to this Court's authority under 18
24   U.S.C. § 401(3).

25                          <u>**SUMMARY JUDGMENT**</u>

26   Summary judgment is appropriate when it is demonstrated that
27   there exists no genuine issue as to any material fact, and that
28   the moving party is entitled to judgment as a matter of law.

ORDER - 8

Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  *Id.*  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex Corp.*, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id*. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  *Id*. at 323.

   If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific

ORDER - 9

1  facts in the form of affidavits, and/or admissible discovery

2  material, in support of its contention that the dispute exists.

3  Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n. 11.  The

4  opposing party must demonstrate that the fact in contention is

5  material, i.e., a fact that might affect the outcome of the suit

6  under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

7  242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec.*

8  *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the

9  dispute is genuine, i.e., the evidence is such that a reasonable

10 jury could return a verdict for the nonmoving party, *Wool v.*

11 *Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

12      In the endeavor to establish the existence of a factual

13 dispute, the opposing party need not establish a material issue of

14 fact conclusively in its favor.  It is sufficient that "the

15 claimed factual dispute be shown to require a jury or judge to

16 resolve the parties' differing versions of the truth at trial."

17 *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary

18 judgment is to 'pierce the pleadings and to assess the proof in

19 order to see whether there is a genuine need for trial.'"

20 *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)

21 advisory committee's note on 1963 amendments).

22      In resolving the summary judgment motion, the court examines

23 the pleadings, depositions, answers to interrogatories, and

24 admissions on file, together with the affidavits, if any.  Fed. R.

25 Civ. P. 56(c).  The evidence of the opposing party is to be

26 believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences

27 that may be drawn from the facts placed before the court must be

28 drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587

ORDER - 10

(citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

**I.  Ct. Rec. 465**

By way of Ct. Rec. 465, Plaintiffs move the Court for an order of partial summary judgment finding that Defendants Global Horizons, Inc. ("Global"), Green Acre Farms, Inc. ("Green Acre"), and Valley Fruit Orchards, LLC ("Valley Fruit"), violated the following provision of the Farm Labor Contractors Act ("FLCA"), RCW 19.30, *et seq.*, and the Migrant and Seasonal Agricultural Workers Protection Act ("AWPA"), 29 U.S.C. §§ 1801, *et seq.*: (1) failing to provide required disclosures, (2) providing false and misleading information about the terms of employment, (3) violating the terms of the working agreement, (4) failing to pay wages due, and (5) failing to provide adequate written pay statements.  (Ct. Rec. 465).  Plaintiffs also seek summary judgment against Defendant Mordechai Orian ("Orian") for AWPA violations and against Global and Orian for the willful withholding of wages under RCW 49.52.050.  (Ct. Rec. 465).  As

1  noted above, Defendants failed to file an opposition memorandum to

2  Plaintiffs' motion for partial summary judgment.

3       A.  Failure To Provide Required Disclosures

4       FLCA requires farm labor contractors to provide disclosures

5  to workers about the terms and conditions of employment at the

6  time of hiring, recruiting, soliciting, or supplying, whichever

7  occurs first, on a form provided by the State of Washington.  RCW

8  19.30.110(7).  The written statement must be in English and any

9  other language common to workers who are not fluent or literate in

10 English.  RCW 19.30.110(7).

11      Plaintiffs' statement of material facts, which has not been

12 disputed by Defendants, indicates that Global took applications

13 from over one-hundred U.S. Resident Workers who were Spanish

14 speaking.  (Ct. Rec. 467, p. 4).  Global failed to provide U.S.

15 Resident Workers with the disclosures on the form required by the

16 State of Washington and failed to provide the statement in

17 Spanish.  (Ct. Rec. 467, pp. 4-6).[3]

18      The evidence presented by Plaintiffs is undisputed.

19 Therefore, Summary judgment with respect to Plaintiffs' claim that

20 Global failed to provide adequate disclosures in violation of

21 FLCA, RCW 19.30.110(7), is appropriate.

22 ///

23 _____

24      [3]As part of a settlement agreement Global entered with the
   State of Washington, Global stipulated that it did not provide any
25 employees with the required Washington State FLC-Worker agreement
   forms in 2004, an attorney for Global wrote in January of 2005
26 that Global "was not aware that it was required to provide a copy
   of the Washington State 'Farm Labor Contractor and Worker
27 Agreement' to H-2A and domestic workers in their language," and
   Plaintiffs requested in this lawsuit that Global and Orian produce
28 all Washington State FLC-Worker agreement forms provided to U.S.
   Resident Workers in 2004, to which they responded "none."  (Ct.
   Rec. 467, pp. 5-6).

ORDER - 12

**B.  Providing False And Misleading Information About The
Terms Of Employment**

Providing false and misleading information regarding any of
the terms or conditions of employment to either a migrant or a
seasonal worker is a violation of AWPA.  29 U.S.C. §§ 1821(f),
1831(e).  AWPA requires each farm labor contractor, agricultural
employer, and agricultural association to provide written
disclosures of the terms and conditions of employment and to post
in a conspicuous place a poster provided by the Secretary setting
forth the rights and protections afforded to the workers under
AWPA, including the terms and conditions, if any, of occupancy of
housing.  29 U.S.C. §§ 1821(a)-(c), 1831(a)-(c).  AWPA holds that
"[n]o farm labor contractor, agricultural employer, or
agricultural association shall knowingly provide false or
misleading information to any migrant agricultural worker
concerning the terms, condition, or existence of agricultural
employment required to be disclosed."  29 U.S.C. §§ 1821(f),
1831(e).  FLCA prohibits any person acting as a farm labor
contractor from making or causing to be made, to any person,
false, fraudulent, or misleading information concerning the terms
or conditions of employment.  RCW 19.30.120(2).

Plaintiffs' statement of material facts, which, again, has
not been disputed by Defendants, indicates that the Clearance
Orders used by Defendants in the State of Washington in 2004
provide that "[d]aily transportation from the employer-provided
housing to the fields, if necessary, will be offered to workers by
the employer at no cost to workers.  Local workers, may, but are
not required, to use this transportation."  (Ct. Rec. 467, p. 6).
Global did not advise applicants of the availability of

ORDER - 13

transportation benefits, as promised in the Clearance Orders. (Ct. Rec. 467, pp. 6-8).  In fact, Global used the application process to exclude prospective employees who did not have their own transportation.  (Ct. Rec. 467, pp. 6-8).[4]

The Clearance Orders used by Global in Washington State in 2004 contain no information with respect to production standards. (Ct. Rec. 467, p. 8).  Production standards were, however, set and communicated to Global by Valley Fruit and Green Acres.  (Ct. Rec. 467, p. 9).  Global did not inform U.S. Resident Workers that they would have to meet specific production standards at the time of their recruitment, nor were U.S. Resident Workers' applications modified to include additional terms to their job orders once production standards were communicated.  (Ct. Rec. 467, p. 9). Defendants imposed specific production standards on U.S. Resident Workers and fired U.S. Resident Workers for failing to meet those standards.  (Ct. Rec. 467, p. 9).

Based on the foregoing undisputed material facts, it is apparent that Global provided false and misleading information to Plaintiffs regarding the availability of transportation and with respect to the existence of production standards.  Plaintiffs are therefore entitled to summary judgment against Global for providing false and misleading information regarding the terms and

---

[4]Maria Ramirez, who was employed by Global and involved with recruiting workers in 2004, stated that she would never advise applicants about the availability of transportation, and, instead, an applicant would be told they would have to provide their own transportation.  (Ct. Rec. 467, p. 7).  Ebony Williams, an employee of Global in 2004, stated that Global never provided or offered transportation to workers.  (Ct. Rec. 467, p. 8).  Ms. Williams indicated that the rationale for asking applicants whether they had their own transportation, was to determine who they would hire based on the fact that they were not able to provide transportation if an employee requested it.  (*Id.*).

conditions of employment in violation of AWPA (29 U.S.C. §§
1821(f), 1831(e)) and in violation of FLCA (RCW 19.30.120(2)).

C.  Violating The Terms Of The Working Agreement

Pursuant to AWPA, an agricultural employer is prohibited from
violating the terms of any working arrangement with a worker
without justification.  29 U.S.C. §§ 1822(c), 1832(c).  Under
FLCA, a farm labor contractor must comply with the terms and
provisions of all legal and valid agreements and contracts.  RCW
19.30.110(5).

Plaintiffs' statement of material facts indicates that the
Clearance Orders, approved by the DOL and used by Global in
Washington State in 2004, called for a progressive discipline
process requiring workers to be provided with a written reprimand
upon a second violation of a work rule.  (Ct. Rec. 467, p. 10).
Despite the uncontested fact that U.S. Resident Workers were
terminated for not keeping up with production standards, Global
did not provide written reprimands or warnings prior to the
workers' terminations.  (Ct. Rec. 467, pp. 11-12).  Global has not
produced a single written reprimand from 2004.  (*Id.*).

Plaintiffs' undisputed facts also reveal that Global employed
H-2A workers without approval from the DOL.  (Ct. Rec. 466; Ct.
Rec. 467).  Nonimmigrant foreign workers cannot be employed in the
United States unless the employer has obtained prior certification
from the DOL.  8 U.S.C. §1188(a)(1).  The certification process
requires an employer to submit clearance orders that include the
material terms of the job and an agreement to comply with
employment related laws and regulations.  20 C.F.R. §§
655.101(b)(1), 655.101(b)(2), 655.102 and 655.103(b).

1    Global's Clearance Orders used in Washington State in 2004
2    state that "[t]he employer agrees to abide by the assurances
3    required at 20 C.F.R. Part 655, Subpart B, including the
4    regulations at 20 C.F.R. § 655.103 and 20 C.F.R. § 653.501.  This
5    Clearance Order describes the actual terms and conditions of the
6    employment being offered by Global . . . and contains all the
7    material terms and conditions of employment."  (Ct. Rec. 467, p.
8    12).

9        An employer may not change the terms or working conditions,
10   including increasing the number of workers requested without
11   approval from the DOL.  20 C.F.R. § 655.101(c), (d), and (e); 20
12   C.F.R. § 655.106(c).  Job opportunities may not be transferred
13   from one employer to another.  20 C.F.R. § 655.106(c)(1).  The
14   only exception that allows an employer to transfer workers from
15   one farm to another farm is if the initial application was made on
16   behalf of an association of member farms, not an individual farm.
17   8 U.S.C. § 1188(c)(3)(B)(iv); 20 C.F.R. § 655.106(c)(2)(ii).
18   Plaintiffs' undisputed facts reveal that Defendants did not apply
19   to the DOL for H-2A workers as an association of member farms in
20   Washington State in 2004.  (Ct. Rec. 467, p. 13).

21       The undisputed facts demonstrate that, on February 23, 2004,
22   Global obtained approval from the DOL to employ up to twelve H-2A
23   workers at Valley Fruit between February 23 and April 1, 2004,
24   and, on August 6, 2004, Global obtained additional approval from
25   the DOL to employ up to sixty-two H-2A workers at Valley Fruit
26   between August 15 and October 31, 2004.  (Ct. Rec. 467, pp. 13-
27   14).  Global did not obtain any other approval from the DOL to
28   employ H-2A workers at Valley Fruit in 2004.  Nevertheless, Global

ORDER - 16

had crews of H-2A workers from Thailand working at Valley Fruit between June 20 and August 11, 2004.  (Ct. Rec. 467, pp. 14-15).

     The undisputed facts also show that, on March 18, 2004, Global obtained approval from the DOL to bring in a maximum of 131 H-2A foreign workers at Green Acre between March 18 and November 5, 2004.  (Ct. Rec. 467, p. 16).  However, during the week of August 8-14, 2004, 154 H-2A workers from Thailand were working at Green Acre; during the week of August 15-21, 2004, 151 H-2A workers were working at Green Acre; during the week of August 29-September 4, 2004, 145 H-2A workers were working at Green Acre; during the week of September 5-11, 2004, 145 H-2A workers were working at Green Acre; during the week of September 12-18, 2004, 145 H-2A workers were working at Green Acre; during the week of September 19-25, 2004, 145 H-2A workers were working at Green Acre; during the week of September 26-October 2, 2004, 172 H-2A workers were working at Green Acre; and during the week of October 3-9, 2004, 172 H-2A workers were working at Green Acre.  (Ct. Rec. 467, pp. 16-17).  Accordingly, despite the cap of 131 H-2A workers placed on Global by the DOL, Global employed a greater number of H-2A foreign workers at Green Acre between August 8 and October 9, 2004.

     The failure to comply with the statutory and regulatory requirements noted above, by using unapproved H-2A workers at Valley Fruit and exceeding the DOL limit for H-2A workers at Green Acre, is a violation of the specific assurance made in the Clearance Orders in 2004 that indicated Global would comply with the law.  Therefore, Plaintiffs are entitled to summary judgment on their AWPA and FLCA claims for Global's violations of the

ORDER - 17

working arrangements and violations of legal and valid agreements and contracts.

### D.  Failure To Pay Wages Due

Pursuant to AWPA, an agricultural employer must pay to each worker the wages owed when due.  29 U.S.C. §§ 1822(a), 1832(a). Under FLCA, a farm labor contractor must pay or distribute to the individuals entitled thereto all moneys owed promptly when due. RCW 19.30.110(4).

Global admits that, for a limited period of time and "due to clerical error," Global deducted from the pay of certain employees taxes that were not required by the State of Washington.  (Ct. Rec. 467, pp. 17-18).  While U.S. Resident Workers may have been reimbursed by Global for the deductions in 2005, Global admittedly failed to pay Plaintiffs the wages they were owed when due in violation of AWPA and FLCA.  (Ct. Rec. 467, pp. 17-24).

On July 30, 2004, the DOL accepted Global's temporary labor certification application for work to be performed at Valley Fruit.  (Ct. Rec. 467, p. 24).  The Valley Fruit Clearance Order included a piece rate of $19 per bin for the pear harvest which commenced at Valley Fruit in August of 2004.  (Ct. Rec. 467, p. 25).  Workers at Valley Fruit were thus entitled to be paid the piece rate of $19 per bin in the pear harvest in 2004.  The uncontested facts show that Plaintiffs were not paid a piece rate for the pear harvest at Valley Fruit in August of 2004.  (Ct. Rec. 467, pp. 25-27).

Based on the foregoing, Plaintiffs are entitled to summary judgment for Defendants failure to pay Plaintiffs the wages they were owed when due in violation of AWPA and FLCA.

E.  Failure To Provide Adequate Written Pay Statements

According to AWPA, an agricultural employer must provide to each worker, for each pay period, an itemized written statement that includes the basis on which wages are paid, the number of piecework units earned, the number of hours worked, the total pay period earnings, the specific sums withheld and the purpose of each sum withheld, and the net pay.  29 U.S.C. §§ 1821(d), 1831(c).  Under FLCA, a farm labor contractor must furnish to each worker a written statement itemizing the total payment and the amount and purpose of each deduction therefrom, hours worked, rate of pay, and pieces done if the work is done on a piece rate basis.  RCW 19.30.110(8).

In response to Plaintiffs' request for copies of all pay statements provided to U.S. Resident Workers in 2004, Global responded "none."  (Ct. Rec. 467, p. 28).  Global nevertheless concedes that it failed to itemize the pieces done on the pay statement when work was paid on a piece rate basis at Valley Fruit in 2004.  (Ct. Rec. 467, p. 27).  Based on the undisputed facts, Plaintiffs are entitled to summary judgment for Global's failure to provide adequate pay statements in violation of AWPA and FLCA.

**II.  Ct. Rec. 465 (Willful Withholding of Wages)**

A violation of RCW 49.52.050(2) occurs when an employer or officer, vice principal or agent of any employer "[w]illfully and with intent" deprives an employee of any part of his wages.  RCW 49.52.050(2).  Any employer and any officer who violates RCW 49.52.050 "shall be liable in a civil action by the aggrieved employee . . . to judgment for twice the amount of the wages ///

unlawfully rebated or withheld . . . cost of suit and a reasonable
sum for attorney's fees."  RCW 49.52.070.

Plaintiffs allege that Global, as the employer, and Orian, as
an officer of the employer, are liable under RCW 49.52.070 for the
willful failure to pay wages.  (Ct. Rec. 466, pp. 13-16).  "There
are two instances when an employer's failure to pay wages is not
willful: the employer was careless or erred in failing to pay, or
a 'bona fide' dispute existed between the employer and employee
regarding the payment of wages." *Schilling v. Radio Holdings,
Inc.*, 136 Wash.2d 152, 159 (1998).

Although Plaintiffs assert that Global's unlawful deductions
of Washington State income tax may not, as a matter of law, be
considered the result of carelessness or error, the facts
presented by Plaintiffs compel a different conclusion.

Global admits that, for a limited period of time and "due to
clerical error," Global deducted from the pay of certain employees
taxes that were not required by the State of Washington.  (Ct.
Rec. 467, pp. 17-18).  The uncontested facts of Plaintiffs show
that Global "unintentionally" withheld money from the workers'
paychecks due to computer programming problems.  (Ct. Rec. 467, p.
18).  The facts show that the software Global starting using in
June 2004 deducted state taxes when it should not have.  (Ct. Rec.
467, p. 20).  On September 22, 2005, Global entered into a
settlement agreement with the State of Washington and stipulated
that it had withheld $3,235.64 in wages from U.S. Resident Workers
for Washington State income tax in 2004 and that Washington State
does not have a state income tax.  (Ct. Rec. 467, p. 18).  The
error was discovered in late 2004 or early 2005 and refunds were

administered in September of 2005.  (Ct. Rec. 467, pp. 17-23).
The problem with the deductions for taxes was corrected in late
2005 when Orian purchased a different software system.  (Ct. Rec.
467, p. 24).

Based on the foregoing, the Court finds the existence of an
issue of fact regarding the willfulness of the withholding of
wages.  Plaintiffs are thus denied summary judgment on their
claim, pursuant to RCW 49.52.070, that Global and Orian
intentionally deprived employees of their wages.

**III.  Ct. Rec. 459**

By way of Ct. Rec. 459, Plaintiffs move the Court for an
order of partial summary judgment finding that Defendants Green
Acre and Valley Fruit are liable for alleged violations of FLCA,
RCW 19.30, *et seq.*, and AWPA, 29 U.S.C. §§ 1801, *et seq*.  (Ct.
Rec. 459).  Plaintiffs assert that Green Acre and Valley Fruit are
jointly liable for all AWPA violations as joint employers of
Plaintiffs and because an agency relationship existed with Global.
Plaintiffs additionally assert that Green Acre and Valley Fruit
are liable for all FLCA violations because they illegally employed
Global as an unlicensed farm labor contractor in 2004.  (Ct. Rec.
460).  Again, as noted above, no Defendant has filed an opposition
memorandum to Plaintiffs' motion.

A.  Joint Employment Relationship

Plaintiffs argue that Defendants Green Acre and Valley Fruit
are liable for AWPA damages as joint employers along with Global.
(Ct. Rec. 460, pp. 2-17).

///

///

ORDER - 21

A grower's liability under AWPA depends on whether it "employed" workers. 29 U.S.C. § 1802(2). An entity "employs" a person under AWPA if it "suffers or permits" the individual to work. 29 U.S.C. § 1802(5) (AWPA holds that the term "employ" has the meaning given such term under section 3(g) of the Fair Labor Standards Act of 1938 ("FLSA")); *Antenor v. D & S Farms*, 88 F.3d 925 (11th Cir. 1996). AWPA's adoption of FLSA's definition of employment "was deliberate and done with the clear intent of adopting the 'joint employer' doctrine as a central foundation of this new statute; it is the indivisible hinge between certain important duties imposed for the protection of migrant and seasonal workers and those liable for any breach of these duties." *Antenor*, 88 F.3d at 929-930 (*quoting* H.R.Rep. No. 97-885, 97th Cong., 2d Sess. 1982) 6, *reprinted in* 1982 U.S.C.C.A.N 4547, 4552); 29 C.F.R. § 500.20(h)(5)(ii).

The concept of joint employment, in the context of an AWPA case, maintains that two or more employers may jointly employ an individual, and every employer is individually liable for any violations that may occur. *Zhao v. Bebe Stores, Inc., et al.*, 247 F.Supp.2d 1154, 1157 (C.D. Cal. 2003).

To determine whether a joint employment relationship exists, a court applies the "economic reality" test. *Torres-Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997). Under the economic reality tests, "[a] court should consider all those factors which are 'relevant to [the] particular situation' in evaluating the 'economic reality' of an alleged joint employment relationship." *Torres*, 111 F.3d at 639 (*quoting*, *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)). In making

its joint employment determination, the Ninth Circuit in *Torres*
considered five "regulatory factors"[5] as well as the following
"nonregulatory" factors: (1) whether the work was a specialty job
on the production line, (2) whether responsibility under the
contracts between a labor contractor and an employer pass from one
labor contractor to another without material changes, (3) whether
the premises and equipment of the employer are used for the work,
(4) whether the employees had a business organization that could
or did shift as a unit from one worksite to another, (5) whether
the work was piecework and not work that required initiative,
judgment or foresight, (6) whether the employee had an opportunity
for profit or loss depending upon the alleged employer's
managerial skill, (7) whether there was permanence in the working
relationship, and (8) whether the service rendered is an integral
part of the alleged employer's business." *Torres*, 111 F.3d at
639.  The *Torres* Court considered the foregoing regulatory and
non-regulatory factors and concluded, as a matter of law, that a
grower (Bear Creek Farms) was a joint employer along with its farm
labor contractor (Ag-Labor) for purposes of FLSA and AWPA.
*Torres*, 111 F.3d at 644-645.

Following the *Torres* decision, new regulations were issued to
remedy the "overly restrictive" court interpretations of the
regulations in defining the concept of "joint employer."  *Torres*,

---

[5]The "regulatory factors" considered by the Court were as
follows: (A) the nature and degree of control of the workers; (B)
the degree of supervision, direct or indirect, of the work; (C)
the power to determine the pay rates or the methods of payment of
the workers; (D) the right, directly or indirectly, to hire, fire,
or modify the employment conditions of the workers; and (E)
preparation of payroll and the payment of wages.  *Torres*, 111 F.3d
at 639-640; former 29 C.F.R. § 500.20(h)(4)(ii).

111 F.3d at 641 n. 6.  The new AWPA regulations regarding joint employment contain the following seven non-exhaustive factors to be analyzed:

> (A) Whether the agricultural employer has the power, either alone or through control of the farm labor contractor to direct, control or supervise the workers or work performed;

> (B) Whether the agricultural employer has the power, either alone or in addition to another employer, directly or indirectly, to hire or fire, modify the employment conditions, or determine the pay rates or the methods of wage payments for workers;

> (C) The degree of permanency and duration of the relationship of the parties;

> (D) The extent to which the services rendered by the workers are repetitive, rote tasks requiring skills which are acquired with relatively little training;

> (E) Whether the activities performed by the workers are an integral part of the overall business operation of the agricultural employer;

> (F) Whether the work is performed on the agricultural employer's premises, rather than on the premises owned or controlled by another business entity; and,

> (G) Whether the agricultural employer undertakes responsibilities in relation to the workers which are commonly performed by employers.

29 C.F.R. § 500.20(h)(5)(iv)(A)-(G).

The undisputed facts establish that the contracts with Green Acre and Valley Fruit required them to tell Global how many employees were needed and what to do on a daily basis.  (Ct. Rec. 461, p. 3).  Green Acre and Valley Fruit made all decisions regarding when to start and stop all work tasks performed by Global crews and had the right to inspect the work of Global crews at all times.  (Ct. Rec. 461, p. 4).  Both Jim Morford, the co-owner of Green Acre, and John Verbrugge, a manager at Valley Fruit, constantly reviewed the quality and quantity of the work performed by the Global crews.  (Ct. Rec. 461, pp. 5-20).  Mr.

ORDER - 24

Morford and Mr. Verbrugge set forth performance standards for
Global crews. (Ct. Rec. 461, pp. 7, 15, 22). Global provided
both Mr. Morford and Mr. Verbrugge with daily reports to keep them
apprised of costs. (Ct. Rec. 461, pp. 8-9, 15). Green Acre and
Valley Fruit closely tracked the progress and performance of
Global's workers. (Ct. Rec. 461, pp. 5-20).

Green Acre and Valley Fruit set the productivity standards,
and some of Global's workers were terminated because Green Acre
and Valley Fruit were not happy with the production. (Ct. Rec.
461, pp. 12-13, 22). With respect to Green Acre, a crew of Global
workers "didn't come back" after Mr. Morford complained about the
productivity of the crew to Global employees. (Ct. Rec. 461, pp.
12-13). With respect to Valley Fruit, based on instructions from
Stan Buechler, a manager at Valley Fruit, a Global employee gave
workers written warnings and fired workers for not meeting
expectations. (Ct. Rec. 461, pp. 19-20). Mr. Verbrugge testified
that he individually fired a crew of Global's workers for lack of
productivity at Valley Fruit. (Ct. Rec. 461, p. 20). In
addition, Mr. Verbrugge agreed to a change to a piece rate rather
than an hourly rate, as requested by Global's workers, during the
2004 cherry harvest at Valley Fruit. (Ct. Rec. 461, p. 19)
Therefore, Valley Fruit exercised authority regarding changes in
wages, as well.

The Clearance Orders used by Global in 2004 at Green Acre and
Valley Fruit did not require job applicants to have prior orchard
experience, nor did the jobs of pruning, thinning and harvesting
require great "initiative, judgment, or foresight." *Torres*, 111
F.3d at 644; (Ct. Rec. 461, p. 14).

ORDER - 25

Plaintiff's work was an "integral part" of the business of Green Acre and Valley Fruit. Without Global's workers tending and harvesting the orchards, neither Green Acre nor Valley Fruit would have realized any economic benefits.

Green Acre and Valley Fruit owned or controlled the land upon which Global's workers worked in 2004, paid the costs associated with applying fertilizers and pesticides and for transporting the harvested fruit from the fields to the packing sheds, and owned the orchard equipment utilized for the various orchard tasks. (Ct. Rec. 461, p. 3-4).

Based on these uncontested facts, which demonstrate that Green Acre and Valley Fruit had control and oversight over the day-to-day working conditions of Global's workers, and taking into consideration the AWPA regulations regarding joint employment (29 C.F.R. § 500.20(h)(5)(iv)(A)-(G)), it is determined, as a matter of law, that Green Acre and Valley Fruit were joint employers with Global for purposes of Plaintiffs' AWPA claims. Plaintiffs are thus entitled to summary judgment with respect to this issue.

B.  Global as Agent for Green Acre and Valley Fruit

Plaintiffs assert that Defendant Global was the agent for Defendants Green Acre and Valley Fruit, and; therefore, Green Acre and Valley Fruit are liable for all AWPA recruitment violations committed by Global. (Ct. Rec. 460, pp. 17-18).

The uncontested facts show that both Green Acre and Valley Fruit contracted with Global, in or about December of 2003, to recruit and provide labor at their respective fruit orchards in 2004. (Ct. Rec. 461, p. 2). It is undisputed that Green Acre and Valley Fruit contracted with Global for the purpose of recruiting

labor to their orchards.  Accordingly, Plaintiffs are entitled to judgment, as a matter of law, that Global served as the agent for Green Acre and Valley Fruit for recruitment purposes during the relevant time period.

C.  Hiring Unlicensed Farm Labor Contractor

Plaintiffs contend that Green Acre and Valley Fruit are liable under FLCA for hiring Global, an unlicensed farm labor contractor.  (Ct. Rec. 460, pp. 18-19).

FLCA holds that "[a]ny person who knowingly uses the services of an unlicensed farm labor contractor shall be personally, jointly, and severally liable with the person acting as a farm labor contractor."  RCW 19.30.200.

It is undisputed that Global operated as an unlicensed farm labor contractor in Washington State on behalf of Green Acre and Valley Fruit from January to October 6, 2004.  (Ct. Rec. 461, p. 23).  The uncontested facts reveal that neither Mr. Morford nor Mr. Verbrugge investigated whether Global possessed a valid Washington State farm labor contractor license, and, after they were each advised that no license existed in July of 2004, they continued to use Global's services.  (Ct. Rec. 461, pp. 23-26).  Green Acre and Valley Fruit continued to use the services of Global between July and October of 2004.  (Ct. Rec. 461, p. 26).

Based on these undisputed facts, Plaintiffs are entitled to summary judgment on their claim that Green Acre and Valley Fruit knowingly used the services of an unlicensed farm labor contractor in 2004.  Accordingly, Green Acre and Valley Fruit are jointly and severally liable with Global, the farm labor contractor, for all violations of FLCA.

1        **<u>STATUTORY DAMAGES</u>**

2        As noted above, on June 22, 2007, Plaintiffs filed a motion,

3   pursuant to Fed. R. Civ P. 39(a), to strike Defendants' jury

4   demand with respect to Plaintiffs' AWPA and FLCA summary judgment

5   claims.  (Ct. Rec. 498).  Plaintiffs moved for a Court

6   determination of statutory damages under FLCA.  (Ct. Rec. 498).

7   Defendants did not respond to this motion.  Accordingly, as

8   indicated above, the Court vacated the July 24, 2007 hearing on

9   Plaintiffs' motion.  Plaintiffs filed a reply memorandum and

10  supporting documentation on July 10, 2007.  (Ct. Rec. 505; Ct.

11  Rec. 506).

12       Pursuant to this Court's local rules, Defendants had eleven

13  (11) calendar days, from service, to file a timely responsive

14  memorandum.  LR 7.1(c).  No response from Defendants has been

15  received by the Court.  Local Rule 7.1(h)(5) holds that "[a]

16  failure to timely file a memorandum of points and authorities in

17  support of or in opposition to any motion may be considered by the

18  Court as consent on the part of the party failing to file such

19  memorandum to the entry of an Order adverse to the party in

20  default."

21       A.  <u>Jury Demand</u>

22       Based on the above award of summary judgment by the Court on

23  Plaintiffs' AWPA and FLCA claims (*see, supra*), Defendants' failure

24  to oppose those motions, and Defendants' failure to oppose

25  Plaintiffs' motion to strike Defendants' jury demand, Plaintiffs

26  motion, pursuant to Fed. R. Civ P. 39(a), to strike Defendants'

27  jury demand with respect to Plaintiffs' AWPA and FLCA summary

28  judgment claims (**Ct. Rec. 498**) is **GRANTED**.  Defendants' jury

demand with respect to Plaintiffs' AWPA and FLCA summary judgment claims is therefore **STRICKEN.**

B.  Statutory Damages

Plaintiffs elect to seek recovery of only statutory damages under FLCA, as opposed to the federal statute.[6]  (Ct. Rec. 498). Pursuant to FLCA, the Court may award the prevailing party, in addition to costs and reasonable attorney fees, actual damages or statutory damages of five hundred dollars per plaintiff per violation, whichever is greater.  RCW 19.30.170(1), (2).  While the more modest damage structure under AWPA[7] appears reasonable based on the bizarre circumstances the Court is currently presented with, Defendants' failure to contest Plaintiffs' motion for damages under FLCA directs otherwise.  The Court **GRANTS** Plaintiffs' request for statutory damages under FLCA (**Ct. Rec. 498**).

Plaintiffs have produced uncontested evidence in the form of pleadings and exhibits which demonstrate the following number of persons in each of the three subclasses:  U.S. Resident Workers Denied Work - 423; Valley Fruit - 169; and Green Acre - 138 (38

---

[6]Plaintiffs indicate that they seek only statutory damages under FLCA, because the statutory award remedies under the state statute is more generous (automatic $500.00 award for each violation, separate awards for multiple violations of a subsection, no cap for class action awards, and attorneys' fees and costs available).  *Compare* RCW 19.30.170 *with* 29 U.S.C. § 1854(c).

[7]Pursuant to AWPA, if the court finds that a defendant has intentionally violated any provision of the Act, it may award actual damages or statutory damages of up to $500 per plaintiff per violation except that multiple infractions of a single provision constitute only one violation for purposes of determining the amount of statutory damages and, the court shall make an award no greater than $500,000.00 if certified as a class action.  29 U.S.C. § 1854(c)

members of the Green Acre subclass also worked at Valley Fruit and will be considered part of the Valley Fruit subclass for purposes of assessing statutory damages). (Ct. Rec. 498; Ct. Rec. 499; Ct. Rec. 505; Ct. Rec. 506).

As determined above, Plaintiffs are entitled to judgment against Global, as a matter of law, for Global's failure to provide adequate disclosures in violation of FLCA, for Global's violation of AWPA and FLCA by providing false and misleading information regarding the terms and conditions of employment, for Global's violations of the working arrangements and violations of legal and valid agreements and contracts in violation of AWPA and FLCA, for Global's failure to pay Plaintiffs the wages they were owed when due in violation of AWPA and FLCA, and for Global's failure to provide adequate pay statements in violation of AWPA and FLCA. *Supra*. Furthermore, Green Acre and Valley Fruit are liable, as a matter of law, as joint employers with Global for purposes of Plaintiffs' AWPA claims, it is established that Global served as the agent for Green Acre and Valley Fruit for recruitment purposes, and it is established that Green Acre and Valley Fruit knowingly used the services of an unlicensed farm labor contractor in 2004 in violation of FLCA. *Supra*.

Plaintiffs' uncontested motion reveals that four of the above violations affected the U.S. Resident Workers Denied Work subclass (failure to provide required disclosures, providing false and misleading information about transportation benefits, providing false and misleading information about production standards, and failure to comply with the working arrangement by not complying with the law); nine violations affected the Valley Fruit subclass

(failure to provide required disclosures, providing false and
misleading information about transportation benefits, providing
false and misleading information about production standards,
failure to comply with the working arrangement by not complying
with the law, failure to comply with the working arrangement by
not complying with the disciplinary procedures, failure to pay
wages due, failing to provide adequate pay statements in violation
of WAC 296-131-015, failing to provide adequate pay statements by
not itemizing the piece rate units earned (only 115 members of the
Valley Fruit subclass), and failing to pay wages due by not paying
the approved bin rate (only 24 members of the Valley Fruit
subclass)); and seven violations affected the Green Acre subclass
(failure to provide required disclosures, providing false and
misleading information about transportation benefits, providing
false and misleading information about production standards,
failure to comply with the working arrangement by not complying
with the law, failure to comply with the working arrangement by
not complying with the disciplinary procedures, failure to pay
wages due, and failing to provide adequate pay statements in
violation of WAC 296-131-015).

     Plaintiffs are entitled to statutory damages, pursuant to
FLCA, calculated as follows:  U.S. Resident Workers Denied Work -
423 workers x 4 violations x $500 = $846,000.00; Valley Fruit -
169 workers x 7 violations x $500 = $591,500.00; Valley Fruit -
115 workers x 1 violation x $500 = $57,500.00; Valley Fruit - 24
workers x 1 violation x $500 = $12,000.00; and Green Acre - 100
workers x 7 violations x $500 = $350,000.00.  Therefore, judgment
/ / /

ORDER - 31

in favor of Plaintiffs and against Defendants is ordered in the total amount of **$1,857,000.00.**

### CONCLUSION

Based upon the foregoing reasons, **IT IS ORDERED** as follows:

1. The hearing date on Plaintiffs' Motions for Partial Summary Judgment (Ct. Rec. 459, 465) and to Strike Defendants' Jury Demand (Ct. Rec. 498) previously set for July 24, 2007, is **VACATED.**

2. Defendants Global Horizons, Inc., and Mordechai Orian, shall pay to the Court the monetary sanctions previously imposed, in the amount of **$12,500.00,** as well as the additional amount of **$27,000.00,** calculated at $500.00 per day for each calendar day since the initial imposition of sanctions to the date of this order, for Defendants' continued refusal to comply with the Court's orders. A check payable to the United States District Court, Eastern District of Washington, from Defendants Global Horizons, Inc., and Mordechai Orian, in the amount of $39,500.00 is due immediately. **Monetary sanctions, in the amount of $500.00 a day, for each calender day, shall continue until Defendants provide full payment to the Court.**

Should Defendants fail to make payment to the Court in the above amount, Defendant Mordechai Orian shall appear before the Court on **July 24, 2007 at 2:00 p.m.,** in Yakima, Washington, to face the charge of criminal contempt pursuant to this Court's authority under 18 U.S.C. § 401(3).

3. Plaintiffs' Motion for Partial Summary Judgment (**Ct. Rec. 465**) is **GRANTED in part and DENIED in part.**

/ / /

ORDER - 32

Plaintiffs are entitled to judgment against Global, as a matter of law, for Global's failure to provide adequate disclosures in violation of FLCA, for Global's violation of AWPA and FLCA by providing false and misleading information regarding the terms and conditions of employment, for Global's violations of the working arrangements and violations of legal and valid agreements and contracts in violation of AWPA and FLCA, for Global's failure to pay Plaintiffs the wages they were owed when due in violation of AWPA and FLCA, and for Global's failure to provide adequate pay statements in violation of AWPA and FLCA.

However, Plaintiffs are denied summary judgment on their claim, pursuant to RCW 49.52.070, that Global and Orian intentionally deprived employees of wages.

4.    Plaintiffs' Motion for Partial Summary Judgment (**Ct. Rec. 459**) is **GRANTED.**

Plaintiffs are awarded judgment, as a matter of law, that Green Acre and Valley Fruit were joint employers with Global for purposes of Plaintiffs' AWPA claims, that Global served as the agent for Green Acre and Valley Fruit for recruitment purposes, and that Green Acre and Valley Fruit knowingly used the services of an unlicensed farm labor contractor in 2004 in violation of FLCA.

5.    Plaintiffs's June 22, 2007 motion to strike Defendants' jury demand with respect to Plaintiffs' AWPA and FLCA summary judgment claims (**Ct. Rec. 498**) is **GRANTED.**  Defendants' jury demand with respect to Plaintiffs' AWPA and FLCA summary judgment claims is **STRICKEN** and Plaintiffs are entitled to statutory damages, pursuant to FLCA, in the total amount of **$1,857,000.00.**

1       **IT IS SO ORDERED.**  The District Court Executive shall enter

2   judgment accordingly and forward copies to counsel for Plaintiffs

3   and Defendants and the Court's Financial Administrator.

4       **DATED** this_____11ᵗʰ_____day of July, 2007.

5

6                         s/ Alan A. McDonald

7                         ALAN A. MCDONALD
                          SENIOR UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER - 34