UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JOSE GUADALUPE PEREZ-
FARIAS, JOSE F. SANCHEZ,
RICARDO BETANCOURT, and all
other similarly situated persons,

    Plaintiffs,

    v.

GLOBAL HORIZONS, INC., *et al.*,

    Defendants.

NO.  CV-05-3061-RHW

**ORDER ADDRESSING
PENDING MOTIONS;
VACATING JUDGMENT**

    Before the Court are Plaintiffs' Motion for Case Dispositive Sanctions (Ct. Rec. 509); Defendants Valley Fruit Orchards' and Green Acre Farms' Motion for Reconsideration and/or Relief from Judgment (Ct. Rec. 524); and the Global Defendants' Motion for Reconsideration and Alternatively Relief from Default Orders [F.R. Civ. Pro. 60(b)(1) and (6)] (Ct. Rec. 535).[1]  Although the motions were noted for hearing at different times, it is necessary to address these motions in one order because the issues overlap.

### PROCEDURAL HISTORY

    On May 25, 2007, Plaintiffs filed motions for partial summary judgment

---

[1]This case was originally assigned to Magistrate Judge Michael Leavitt.  On June 27, 2007, the case was reassigned to Judge Alan McDonald.  On July 24, 2007, the case was reassigned to Judge Robert H. Whaley.

**ORDER ADDRESSING PENDING MOTIONS;
VACATING JUDGMENT ~ 1**

claiming that the Global Defendants[2] the violated the Washington Farm Labor Contractor Act (FCLA), the federal Migrant and Seasonal Agricultural Worker Protection Act (AWPA) and Washington Wage Payment law (Ct. Rec. 465) and that the Grower Defendants[3] are liable for violations of AWPA and FLCA (Ct. Rec. 459).

On June 1, 2007, the Court granted the Global Defendants' motion to reset the hearing date on Plaintiffs' motions for summary judgment to July 24, 2007, but expressly stated that Defendants must comply with the Court's local rules with respect to timely filing responsive memorandums (Ct. Rec. 490). Pursuant to this Court's local rules, Defendants had until June 5, 2007, to file a timely responsive memorandum. LR 7.1(c). The Court received no response to Plaintiffs' motions for partial summary judgment from any Defendant.

On June 22, 2007, based on the lack of a timely response to Plaintiffs' motions for partial summary judgment, Plaintiffs filed a motion to strike Defendants' jury demand on Plaintiffs' FCLA and AWPA summary judgment claims and to award Plaintiffs statutory damages under FCLA. (Ct. Rec. 498). Pursuant to this Court's local rules, Defendants had until July 3, 2007, to file a timely responsive memorandum. LR 7.1(c). The Court received no response to Plaintiffs' motion.

On July 11, 2007, the Court granted Plaintiffs' Motions for Partial Summary Judgment on the merits (Ct. Rec. 507). The order also granted Plaintiffs' June 22, 2007, motion to strike Defendants' jury demand with respect to Plaintiffs' AWPA and FLCA summary judgment claims and entered judgment against all Defendants in the amount of $1,857,000.00.

---

[2]The Global Defendants are Global Horizons, Inc., Mordechai Orian, Jane Doe Orian, and Platte River Insurance Company.

[3]The Grower Defendants are Green Acre Farms, Inc. and Valley Fruit Orchards, LLC.

**ORDER ADDRESSING PENDING MOTIONS;**
**VACATING JUDGMENT ~ 2**

On July 20, 2007, the Grower Defendants filed a Motion for Reconsideration of the Court's July 11, 2007, order.  (Ct. Rec. 524).  The Grower Defendants contend that the Court erred by failing to exercise discretion to award less than $500.00 per violation and requested that the Court reconsider the statutory damages award.  (Ct. Rec. 525).  On July 26, 2007, one day after the time-period for filing such a motion, the Global Defendants filed a Motion for Reconsideration of the Court's July 11, 2007 order.  (Ct. Rec. 535).  The Global Defendants contend that the Court erred in establishing liability because there was no evidence that the class members were injured by any alleged violations, and the class members have not carried their burden of proof on the element of knowledge to establish an AWPA violation.  Additionally, the Global Defendants contend that material issues of fact exist regarding whether there was a piece rate for the pear harvest at Valley Fruit Orchards; whether Global violated the AWPA or the FLCA by failing to inform workers of the availability of transportation; whether a specific performance standard was imposed on workers; whether any workers were injured by the failure to provide the Washington state form; whether any workers were injured by the failure to provide written warnings prior to termination; and whether Global employed H-2A workers without approval from USDOL or violated a clearance order by having more than the approved number of workers at Green Acres.

ANALYSIS

## I.    Defendants' Motions for Reconsideration

Defendants rely on Fed. R. Civ. P. 60(b) in support of their motions for reconsideration.  In the alternative, the Global Defendants rely on Fed. R. Civ. P. 55.

### A.    Fed. R. Civ. P. 60(b)(1)

Pursuant to Fed. R. Civ. P. 60(b)(1), the Court may relieve a party from a final judgment or order for mistake, inadvertence, surprise, or excusable neglect.

**ORDER ADDRESSING PENDING MOTIONS;**
**VACATING JUDGMENT ~ 3**

1    The discretion vested in the trial court under Fed. R. Civ. P. 60(b) is limited

2  by three policy considerations.  First, Rule 60(b) is remedial in nature, thus it must

3  be liberally applied.  *Gregorian v. Izvestia*, 871 F.2d 1515, 1523 (9th Cir. 1989).

4  Second, default judgments are generally disfavored, and "'[w]henever it is

5  reasonably possible, cases should be decided upon their merits.'"  *Id.* (*quoting Pena*

6  *v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)).  Third, where a

7  defendant seeks timely relief from the judgment and has a meritorious defense,

8  doubt, if any, should be resolved in favor of the motion to set aside the judgment.

9  *Id.*  Under Ninth Circuit precedent, then, a trial court has discretion to deny a Rule

10  60(b) motion to vacate a default judgment if "(1) the plaintiff would be prejudiced

11  if the judgment is set aside, (2) defendant has no meritorious defense, or (3) the

12  defendant's culpable conduct led to the default."  *In re Hammer*, 940 F.2d 524, 525

13  (9th Cir. 1991).

14    In *Pioneer Investment Serv. Co. v. Burnswick Assocs.*, the Supreme Court

15  held that the determination of whether neglect is excusable is an equitable one that

16  takes into account the following factors: (1) danger of prejudice to the other party;

17  (2) length of delay and its potential impact on the judicial proceedings; (3) reason

18  for the delay, including whether it was within reasonable control of the movant;

19  and (4) whether movant acted in good faith.  507 U.S. 380, 395 (1993).  The

20  *Pioneer* decision arose in the bankruptcy context and the Ninth Circuit has applied

21  this four-part test to other federal rules of procedure where the phrase "excusable

22  neglect" appears.  *See Pincay v. Andrews*, 389 F.3d 853 (9th Cir. 2004); *Briones v.*

23  *Riviera Hotel & Casino*, 116 F.3d 379 (9th Cir. 1997); *Marx v. Loral Corp.*, 87

24  F.3d 1049 (9th Cir. 1996).

25  **B.    Fed. R. Civ. P. 55**

26  Fed. R. Civ. P. 55 provides, in relevant part:

27    (a) When a party against whom a judgment for affirmative

28    relief is sought has failed to plead or otherwise defend as provided by

**ORDER ADDRESSING PENDING MOTIONS;**
**VACATING JUDGMENT ~ 4**

these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

(c) For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

Rule 55 does not apply in this case, however, because Judge McDonald did not enter default judgment, but granted Plaintiffs' Motion for Partial Summary Judgment on the merits.

**C.   Global Defendants' Motion for Reconsideration and Alternatively Relief From Default Orders**

The Global Defendants ask the Court to reconsider the Court's findings of liability on the AWPA and FLCA claims.  The Global Defendants rely on the illness of its *pro hac vice* counsel in support of their arguments for excusable neglect and good cause.  The Global Defendants fail to explain to the Court why local counsel could not have submitted the opposition briefing, or filed a motion asking for an extension of time.  According to Local Rule 83.2(c) local counsel shall sign all pleadings, motions, and other papers prior to filing and shall meaningfully participate in this case.  Gregg Randall Smith is local counsel of record and has an office in the District.

Plaintiffs' motion for partial summary judgment was filed on May 25, 2007, and noted for hearing on June 28, 2007.  At that time, Defendants were put on notice that a response would need to be filed by June 5, 2007.  On May 31, 2007, Defendants filed a motion to continue the hearing to a later date.  The Court granted Defendants' motion to reset the hearing, but specifically stated that counsel must comply with the local rules of this Court with respect to timely filing responses and reply memorandum (Ct. Rec. 490).

It was not until July 26, 2007, nearly two months after the deadline had passed, that Defendants filed their motion for reconsideration, in which they presented arguments as to why summary judgment was not appropriate.  The Court

**ORDER ADDRESSING PENDING MOTIONS;**
**VACATING JUDGMENT ~ 5**

does not find excusable neglect or good cause for the late filing because there is nothing in the record to explain why local counsel was not able to comply with the filing deadlines, or why Defendants needed almost two months to respond to the motion. The proffered illness of *pro hac vice* counsel did not include the entire time that Defendants had to respond to the motion. Indeed, in the Global Defendants' May 31, 2007, motion to continue, counsel indicated that while he had some physical difficulties, the impetus for asking for the continuance was that he was scheduled to be out of the country with his son beginning the second week of June until the end of the second week in July. Counsel indicates that he became seriously ill on June 10, 2007, which resulted in his hospitalization. Counsel has not explained why he was unable to complete the briefing during the time between June 1, 2007, the date the order notifying Defendants that the briefing was due on June 5, 2007, and June 9, 2007, the day before counsel reported that he was incapacitated.

The Court denies the Global Defendants' Motion for Reconsideration Alternatively Relief from Default Orders. The Court declines to reconsider Judge McDonald's findings that the Global Defendants and the Grower Defendants violated FLCA and AWPA by (1) failing to provide required disclosures; (2) providing false and misleading information about the terms of employment; (3) violating the terms of the working agreement; (4) failing to pay wages due; and (5) failing to provide adequate written pay statements.

**D.    Grower Defendants' Motion for Reconsideration and/or Relief from Judgment**

The Grower Defendants ask for relief from the order and judgment entered by the Court on July 11, 2007. Although the Grower Defendants did not respond to Plaintiffs' motion for partial Summary judgment on the issue of liability, they are not asking the Court to reconsider that order. On the contrary, in their motion for reconsideration, the Grower Defendants concede that Defendant Global

**ORDER ADDRESSING PENDING MOTIONS;**
**VACATING JUDGMENT ~ 6**

Horizons committed the alleged violations of the FLCA and the AWPA.  What the Grower Defendants ask the Court to reconsider is whether the summary determination of statutory damages in the amount of $500 per violation per person is proper.

Before the Court can answer that question, however, it must first determine whether excusable neglect exists to allow the Court to consider Defendants' arguments since the Grower Defendants failed to file its responsive briefing by the deadline set forth in the Local Rules.

### (1)    Excusable Neglect

Ryan Edgley, the Grower Defendants' counsel, stated that between June 19 and July 9, 2007, he was unable to work due to a medical illness.  The Court finds that excusable neglect exists to excuse the late filing by Mr. Edgley.  Mr. Edgley's illness began prior to the filing of the motion for summary judgment and extended to the Monday just prior to the Court entering the order granting Plaintiffs' motions for summary judgment.  Mr. Edgley is a solo practioner and, unlike Mr. Shiner, had no other counsel to assist him in preparing the brief, or in filing a motion for extension of time to file a response.

If Mr. Edgley had filed a motion asking for an extension of time due to his illness, the Court would have granted the motion.  Thus, the fault of Mr. Edgley does not lie with the failure to file the responsive motion, but with the failure to file the motion for extension of time.  It is understandable that Mr. Edgley would have neglected to file the motion for extension of time, given the nature and condition of this illness and the fact that the motion for summary judgment was filed after the onslaught of his illness.

Plaintiffs rely on a recent district court case of *Davis v. Johnson*, 2007 W.L. 1834846 (E.D. Cal. June 26, 2007), as being directly on point.  Notwithstanding that this case has no precedential value in this Court, Plaintiffs miss one key factor that distinguishes that case from the instant case.  In that case, the district court

**ORDER ADDRESSING PENDING MOTIONS;**
**VACATING JUDGMENT ~ 7**

1    found it significant that the defendant's counsel had nearly a year to anticipate the
2    Government's summary judgment motion.  The Government had filed a nearly
3    identical summary judgment motion a year earlier, but, due to the parties'
4    stipulations to several extensions, it re-filed the summary judgment motion a year
5    later.  Contrast these facts to the briefing schedule that was set forth in this case.
6    At most, Defendants' counsel had 10 days within which to prepare any responsive
7    briefing.

8         Plaintiffs also argue that *Pioneer* stands for the proposition that counsel's
9    illness does not rise to the level of negligence, and therefore, cannot be the basis
10   for a Rule 60(b)(1) motion.  It is true that *Pioneer* quoted Justice Frankfurter's
11   dissent in *Klapprott v. United States*, 335 U.S. 601, 630 (1949) (J. Frankfurther
12   dissent), in which he stated that the defendant's allegations of his *inability* to
13   comply with earlier deadlines took his case outside the scope of "excusable
14   neglect" because "neglect in the context of its subject matter carries the idea of
15   negligence and not merely non-action."  Nevertheless, the context of the *Pioneer*
16   Court quoting  Justice Frankfurter's statement is important.  In *Pioneer*, the
17   Supreme Court was applying the term "excusable neglect" in the bankruptcy
18   context and it looked to other federal rules of civil procedure that contained the
19   term "excusable neglect" in its attempt to distill a workable definition of the term.
20   The context of the discussion of Rule 60(b) was whether (1), or (6) would apply in
21   a given situation.  If (1) applied, the motion would have to be filed within one year
22   of the judgment.  If (6) applied, the court could reopen judgment even after one
23   year has passed.  Thus, if the failure to comply with a filing deadline is attributable
24   to negligence, the motion would need to be filed within one year of the judgment.
25   If the failure to comply with a filing deadline is attributable for reasons beyond a
26   parties control, it is not considered to constitute "neglect" and the one year
27   limitation would not apply.  *Pioneer* does not stand for the proposition that
28   counsel's illness cannot be the basis for a Rule 60(b) motion.

**ORDER ADDRESSING PENDING MOTIONS;**
**VACATING JUDGMENT ~ 8**

In *Briones v. Riviera Hotel & Casino*, the Ninth Circuit applied the *Pioneer* four-factor test to a Rule 60(b) motion. 166 F.3d 379, 381 (9th Cir. 1997). As set forth above, the four factors are: (1) danger of prejudice to the other party; (2) length of delay and its potential impact on the judicial proceedings; (3) reason for the delay, including whether it was within reasonable control of the movant; and (4) whether movant acted in good faith. *Id.*

Here, Mr. Edgley neglected to ask the Court for an extension of time to file his response to Plaintiffs' Rule 39(a) motion to strike jury demand on Plaintiffs' AWPA and FLCA summary judgment claims and request for determination of statutory damages. Even so, he filed his motion for reconsideration along with his substantive briefing within 10 days from the issuance of the order, so the length of delay and the impact on the proceedings was minimal. Plaintiffs have not suggested that Mr. Edgley was acting in bad faith. There is nothing in the record to suggest the reason for the delay was within the reasonable control of Mr. Edgley. The only factor that would mitigate against granting the Grower Defendants' motion for reconsideration is the danger of prejudice to the other party. Obviously, if the Court were to deny the Grower's motion for reconsideration, the $1.8 million judgment would stand. Nevertheless, the policy considerations of Rule 60(b) as set forth above tip the balance in favor of finding excusable neglect.

Thus, the Court finds Mr. Edgley's neglect excusable based on his reported illness. As such, the Court will reconsider the July 11, 2007, order with respect to whether statutory damages in the amount of $500 per violation per plaintiff is appropriate.

## 2. Statutory Damages under FLCA

The Grower Defendants argue that an award of $500 statutory damages for each violation and for each member of the various subclasses is not mandatory. Defendants also argue that the individuals' awards and the aggregate award are disproportionate to the nature or effect of the FLCA violations. Defendants'

**ORDER ADDRESSING PENDING MOTIONS; VACATING JUDGMENT ~ 9**

arguments present two distinct arguments, with the second argument being the most significant, because under Defendants' theory, if the Court were to decide that the statute mandates an award of $500 per violation, per plaintiff, it could still reduce that award based on equitable concerns.

In their Rule 39(a) motion, Plaintiffs notified the Court that they had elected to seek only statutory damages for their AWPA and FLCA summary judgment claims. Plaintiffs assumed that under the FCLA, they would receive an automatic $500 for each violation.

### a.    Whether FLCA Imposes a Mandatory $500 Damage Award per Violation

The provision authorizing damages for violations of FLCA is found in Wash. Rev. Code § 19.30.170(2), which states:

> (2) In any action under subsection (1) of this section, if the court finds that the respondent has violated this chapter or any rule adopted under this chapter, it may award damages up to and including an amount equal to the amount of actual damages, or statutory damages of five hundred dollars per plaintiff per violation, whichever is greater, or other equitable relief.

Under the clear language of the statute, the Court has discretion to decide whether to award damages, either actual or statutory, or other equitable relief, or to decide not to award damages even if a violation has occurred. The question this Court must answer is whether the statute vests the Court with discretion to award statutory damages of less than $500 per violation.

### i.    Plain Language of the Wash. Rev. Code § 19.30.170(2)

Section 19.30.170(2) has never been interpreted by an appellate court in the state of Washington. The parties agree that it is proper for this Court, then, to look to federal court decisions interpreting an analogous provision of AWPA or the former federal Farm Labor Contractor Registration Act (FLCRA) as persuasive

**ORDER ADDRESSING PENDING MOTIONS; VACATING JUDGMENT ~ 10**

authority.[4]

Section 2050a(b) of FLCRA contained the following language:

> If the court finds . . . that the defendant has intentionally violated any provision of this chapter or any regulation prescribed hereunder, the court may award damages up to and including an amount equal to the amount of actual damages, or $500 for each violation, or other equitable relief.

7 U.S.C. § 2050a(b)[5].

Defendants argue that the FLCRA contains almost identical language as section 19.30.170(2), the damages portion of FLCA. While similar, there is an important difference. In the FLCA provision, the Washington legislature included the phrase, "whichever is greater." The question, then, is whether this phrase alters the analysis in any way.

Ninth Circuit precedent has interpreted the FLCRA damages provision as permitting the trial court discretion to award an amount less than $500 per violation. *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1309 (9th Cir. 1990); *Alvarez v. Longboy*, 697 F.2d 1333, 1339-40 (9th Cir. 1983). In *Alvarez*, the question before the Ninth Circuit was whether the district court in applying section 2050a erred in awarding the plaintiffs $150 per violation instead of $500 for each violation. 697 F.2d at 1339 In that case, the plaintiffs argued that section 2050a(b) was unambiguous in that the phrase "may award damages up to" can only be read as applying solely to the provision for actual damages and not

---

[4]Both parties to cite to *Escobar v. Baker*, 814 F.Supp. 1491, 1501 (W.D. Wash. 1993), which recognized that Washington courts often look to federal case law for guidance in construing a state law that substantially parallels a federal law, and applied federal case law analyzing AWPA licensing provisions to the FLCA licensing provision).

[5]This section was repealed and replaced by the Migrant and Seasonal Agricultural Worker Protection Act, Pub.L. 97-470, 96 Stat. 2583 (codified as 29 U.S.C. § 1801 *et seq.*)

**ORDER ADDRESSING PENDING MOTIONS; VACATING JUDGMENT ~ 11**

also to the clause providing for $500 in statutory damages. The Ninth Circuit

rejected the plaintiffs' argument.

In so doing, the Circuit stated the following:

> Section 2050a(b) clearly allows the trial court to award judgment for less than the amount of the actual damage proved by the evidence to have resulted from a violation of the Act. It would be anomalous for Congress to give the court discretion with respect to the amount of the award where actual damage is proven and to deny that discretion where it is not.
> *Id.* at 1339.

Similarly, under the Washington statute, the trial court may award damages

in an amount less than the actual damages proved by the evidence. Additionally,

the Washington statute gives discretion to the trial court to award no actual

damages, to award statutory damages, or not, and to award equitable relief, or not.

It would be anomalous for the Washington legislature to give the court discretion

in determining *whether* to award damages, but deny the discretion to determine the

amount of statutory damages, if the trial court determines statutory damages would

be appropriate.

Returning to the question of whether the phrase "whichever is greater"

changes the analysis as set forth in *Alvarez,* the Court concludes that it does not.

For the same reasons as discussed above, it would be an anomaly to allow the

Court discretion not to award damages, but if the court chose to exercise its

discretion, the amount of damages was statutorily fixed. The phrase "whichever is

greater" directs the trial court to determine the actual damages, compare it to the

court's determination of statutory damages, which could be based on the *Six (6)*

*Mexican Workers* factors, *supra,* and award the highest amount. A contrary

reading of the phrase would impose a minimum $500 damage award per violation

and the Court declines to read such a requirement into the statute without it being

clearly delineated.

The Circuit in *Alvarez* went on to observe that:

> [c]onstruing the Act to allow the district court to award less

**ORDER ADDRESSING PENDING MOTIONS;**
**VACATING JUDGMENT ~ 12**

1   than $500 adequately insures against disproportionately large awards
    when the number of migrant workers is large.
2   *Id.* at 1340.

3       These same considerations apply to the instant case, since this is a class

4   action case with over 800 farm workers represented.

5       Plaintiffs rely on a number of district court cases in which the trial court

6   summarily awarded $500 for each violation: *Guerro v. Garza*, 464 F.Supp. 509,

7   510 (W.D. Wisc. 1978); *Alzalde v. Ocanas*, 580 F.Supp. 1384, 1398 (D.C. Col.

8   1984); *Stewart v. James*, 519 F.Supp. 315 (D.C. N.Y. 1981); *DeLeon v. Ramirez*,

9   465 F.Supp. 698, 705 (D.C. N.Y. 1979); and *Aranda v. Peña*, 413 F.Supp. 839

10  (D.C. Fla. 1976). Obviously, these cases have no precedential value and the

11  significance of these opinions is greatly reduced by the Ninth Circuit's holdings in

12  *Alvarez* and *Six (6) Mexican Workers,* as well as the lack of any analysis in these

13  opinions with regard to the discretionary nature of the statutory damages award.

14      Moreover, the majority of these cases were not class action cases, and

15  therefore, the trial courts did not address whether the existence of a class action

16  would affect the aggregate award amount, which is an important factor to consider,

17  as set forth below.

18              **(ii)    Magnitude of the Damage Award**

19      The Ninth Circuit, in interpreting the statutory damages portion of the

20  FLCRA, has not permitted imposition of a "penalty disproportionate to the

21  offense." *Six (6) Mexican Workers,* 904 F.2d at 1309; *Alvarez*, 697 F.2d at 1339-

22  40. The Circuit has instructed district courts to consider the following factors in

23  determining whether a particular award serves FLCRA's deterrence and

24  compensation objectives: (1) the amount of award to each plaintiff; (2) the total

25  award; (3) the nature and persistence of the violations; (4) the extent of the

26  defendant's culpability; (5) damage awards in similar cases; (6) the substantive or

27  technical nature of the violations; and (7) the circumstances of each case. *Six (6)*

28  *Mexican Workers*, 904 F.2d at 1309. Notably, the Circuit held that "[w]hen the

**ORDER ADDRESSING PENDING MOTIONS;**
**VACATING JUDGMENT ~ 13**

1   class size is large, the individual award will be reduced so that the total award is

2   not disproportionate." *Id.*

3       The question, then, is whether Washington courts would also impose a

4   similar test to determine whether a particular award serves FLCA's deterrence and

5   compensation objectives.  The Court believes it would.  In *Winchester v. Stein*, the

6   Washington Supreme Court reviewed the imposition of discretionary statutory

7   treble damages by the trial court.  The court looked at whether the award of

8   damages was excessive in relation to the purpose of providing an incentive to

9   litigate against the perpetrators.[6]  135 Wash. 2d 835, 858 (1998).  Accordingly, the

10  Court believes the Washington courts would adopt the *Six (6) Mexican Workers*

11  factors to determine whether a damages award was disproportionate to the offense.

12      In the July 11, 2007, order, Judge McDonald stated that "[w]hile the more

13  modest damage structure under AWPA appears reasonable based on the bizarre

14  circumstances the Court is currently presented with, Defendants' failure to contest

15  Plaintiffs' motion for damages under FLCA directs otherwise."  It is not clear

16  whether Judge McDonald would have reached the same conclusion if he had been

17  presented with Defendants' briefing.  More specifically, it is not clear whether

18  Judge McDonald would have imposed the $500 per violation per plaintiff if he had

19  the benefit of Defendants' briefing and the Ninth Circuit cases of *Alvarez* and *Six*

20

21

22

---

23  [6]The statute at issue in that case was the Criminal Profiteering Act, which

    provided, in pertinent part:

24

25      (4) Following a determination of liability, orders may include, but are not
    limited to:

26      (d)  Ordering the payment of actual damages sustained to those persons
    injured by a violation of RCW 9A.82.060 or 9A.82.080, or an offense defined in

27  RCW 9A.40.100, or an act of criminal profiteering that is part of a pattern of
    criminal profiteering, and in the court's discretion, increasing the payment to an

28  amount not exceeding three times the actual damages sustained.
    Wash. Rev. Code § 9A.82.100(4)(d).

**ORDER ADDRESSING PENDING MOTIONS;**
**VACATING JUDGMENT ~ 14**

1  *(6) Mexican Workers.*[7]  Unfortunately, given the untimely death of Judge

2  McDonald, we will never know.

3  Judge McDonald's award of $1.8 million in statutory damages may well be

4  appropriate.  Nevertheless, his reasons for exercising the discretion is not evident

5  from the Court order, which, in turn, makes any type of appellate review

6  problematic.  It is also problematic because he was being asked to award

7  mandatory damages rather than discretionary damages, so the manner in which he

8  exercised his discretion to award the damages is unclear.

9  Thus, for the reasons stated above, the Court grants the Grower Defendants'

10  Motion for Reconsideration (Ct. Rec. 524).  A bench trial on the appropriate

11  amount of damages would permit this Court to exercise its discretion in awarding

12  the appropriate amount of damages.[8]

13                    **E.    Conclusion**

14  The Court denies the Global Defendants' Motion for Reconsideration (Ct.

15  Rec. 535), and declines to disrupt Judge McDonald's order finding liability on the

16  part of the Global Defendants and the Growers Defendants with respect to

17  violations of FLCA and AWPA.  The Court grants the Grower Defendants' Motion

18

19  [7]For reasons not clear, Plaintiffs failed to cite to either *Alvarez* or the *Six (6)*

20  *Mexican Workers* in support of their request for statutory damages, and instead

21  relied on a 1978 district court case from the District of Wisconsin that was also

22  interpreting the same provision of the FLCRA, as were the Ninth Circuit cases.

23  [8]Plaintiffs assume that under the statute they can elect to forgo actual

24  damages and instead receive statutory damages.  Under the Court's interpretation

25  of the statute, whether to grant damages and the type and amount of damages is left

26  to the discretion of the trial court.  This is not to say that Plaintiffs are *required* to

27  present evidence of actual damages, as statutory damages can be awarded without

28  proof of actual injury.

**ORDER ADDRESSING PENDING MOTIONS;**
**VACATING JUDGMENT ~ 15**

for Reconsideration and vacates Judge McDonald's order granting $1.8 million in statutory damages, and sets a bench trial on the amount of damages. The evidence presented at the bench trial will be limited to that evidence which complies with the Amended Scheduling Order (Ct. Rec. 328).

## II.    Plaintiffs' Motion for Case Dispositive Sanctions

On July 17, 2007, Plaintiffs moved the Court for case dispositive sanctions on their remaining claims against the Global Defendants. Plaintiffs seek a default judgment on the remaining claims against the Global Defendants based on the Global Defendants' repeated failure to comply with the Court's orders regarding discovery and for the Global Defendants' failure to preserve evidence. In the alternative, Plaintiffs seek an order striking the affirmative defenses of the Global Defendants.

There is no dispute in this case concerning the Global Defendants' failure to fully comply with the Court's repeated orders regarding discovery. It is undisputed that Global Defendants have failed to timely produce all discovery as ordered by the Court in several discovery orders. (Ct. Rec. 274; Ct. Rec. 298; Ct. Rec. 329; Ct. Rec. 351; Ct. Rec. 363; Ct. Rec. 404; and Ct. Rec. 458). The Global Defendants have not produced discovery in a timely manner and the eve of trial is at hand.

Where it is determined that counsel or a party has acted willfully or in bad faith in failing to comply with the rules of discovery or with Court orders enforcing the rules or in flagrant disregard of those rules or orders, it is within the discretion of the Court to dismiss the action, render judgment by default against the party responsible for noncompliance, enter an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibit the disobedient party from introducing designated matters in evidence. Fed. R. Civ. P. 37(b). The Court will impose a default judgment as a sanction when a party's violations are due to the "willfulness, bad faith, or fault" of the party, and where

lesser sanctions are considered by the Court to be inadequate. *Hyde & Drath v. Baker*, 24 F.3d 1162, 1167 (9th Cir. 1994) (*citing Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1341 (9th Cir. 1985)); *United Artists Corp. v. La Cage Aux Folles, Inc.*, 771 F.2d 1265, 1270-71 (9th Cir. 1985). "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Hyde & Drath*, 24 F.3d at 1166. The failure to pay a fine or sanction may constitute a willful violation of a court order. *Stars' Desert Inn Hotel & Country Club, Inc.*, 105 F.3d 521, 524 (9th Cir. 1997) (upholding $1.8 million default judgment on basis of failure to attend deposition and failure to pay $2100 sanction).

Before entering default judgment, the district court must consider "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id.* "The first two of these factors favor the imposition of sanctions in most cases, while the fourth cuts against a default or dismissal sanction. Thus the key factors are prejudice and availability of lesser sanctions." *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).

To determine whether a district court properly considered the availability of lesser sanctions, the court must consider the  (1) the feasibility of less drastic sanctions and explain why alternative sanctions would be inappropriate; (2) implement alternative sanctions before ordering default; and (3) warn the party of the possibility of default before actually ordering it. *Id.* at 1167.

The Global Defendants have not complied with the Court's orders to timely produce discovery, have not paid Plaintiffs' costs of bringing discovery motions as ordered by the Court, have not paid the sanctions to the Court as directed, and have repeatedly failed to follow this Court's local rules with respect to timely and properly filing documents. In fact, the Global Defendants' response to Plaintiffs'

**ORDER ADDRESSING PENDING MOTIONS;
VACATING JUDGMENT ~ 17**

1   instant motion was filed late and failed to comply with the filing procedures of the

2   Court.  Furthermore, the Global Defendants did not comply with the Court's March

3   27, 2007, Amended Scheduling Order (Ct. Rec. 328) by failing to submit witness

4   and exhibit lists by June 29, 2007.

5        Here, Plaintiffs have been prejudiced by the Global Defendants' failure to

6   comply with the Court's discovery orders and produce discovery in a timely

7   fashion.  Defendants have failed to provide complete discovery of Defendants'

8   violations of AWAP and H-2A regulations (Ct. Rec. 507 at 4; Ct. Rec. 472 at 2);

9   failed to provide documents in connection with the recruitment and employment of

10  H-2A workers (Ct. Rec. 507 at 4-5; Ct. Rec. 472 at 4; Ct. Rec. 448 at 4); failed to

11  produce e-mail and failed to properly preserve email; and produced thousands of

12  duplicate files and provided e-mail related to the issues and witnesses in this case

13  that are completely blank.[9]  The failure to produce this discovery has impeded

14  Plaintiffs' ability to obtain injunctive relief and punitive damages and has

15  hampered their ability to prove Defendants' motivation for intentional

16  discrimination and demonstrate that Defendants preferred H-2A workers from

17  Thailand over class members.

18       Moreover, the Global Defendants' ultimate production of discovery weeks

19  after the deadline for the filing of  witness and exhibit lists expired hindered

20  Plaintiffs' trial preparation and further participation in the discovery process.  This

21  factor weighs in favor of granting Plaintiffs' motion for case dispositive sanctions.

22       The public has an interest in the expeditious resolution of this case.

23  Plaintiffs' case was filed on July 12, 2005.  The two years has been fraught with

24  withdrawals of counsels, extensions of time, and other delays.  An inordinate

25

26       [9]Background regarding Defendants' abuse of the discovery process related

27  to e-mail are set forth in Ct. Recs. 298 at 5; 351 at 6; 404 at 6-7; 454 at ¶¶ 3-16;

28  458 at 2-5; 472 at 3-4; 493 at 2-3 494 ¶¶ 2-18.

**ORDER ADDRESSING PENDING MOTIONS;**
**VACATING JUDGMENT ~ 18**

amount of Court resources has been expended dealing with Defendants' refusal to
meet their discovery obligations and well as their refusal to obey direct Court
orders.

By April 19, 2007, Judge Leavitt concluded that "Defendants have
continued to refuse to provide discovery despite several Court orders directing
them to produce documents.  Defendants have been given ample time to comply
with the Court's orders regarding the discovery requests.  There is no basis for
Defendants' continued refusal to provide the production of documents as ordered
by the Court."  (Ct. Rec. 404, p. 5).

On May 18, 2007, Judge Leavitt was concerned about the lack of candor and
adherence to the Court's orders on the part of the Global Defendants and its
counsel, Mr. Shiner.  "Mr. Shiner's statement that he will do so '[j]ust as soon as
[he] can' is itself a concern to this Court.  It demonstrates that Mr. Shiner and/or
his client do not believe the monetary sanctions previously ordered will be
enforced and that the orders of this Court do not need to be promptly complied
with.  Such statements, in the context of all that has occurred with discovery issues
in this case, severely try the patience of this Court.  The Court expects prompt
compliance with its orders and will enforce the same."  (Ct. Rec. 458, p. 5).

On July 11, 2007, Judge McDonald noted that "despite this Court's order for
Defendants to produce all documents previously ordered no later than the close of
business on April 23, 2007, in the face of daily monetary sanctions (Ct. Rec. 404),
Defendants have still not fully complied with this Court's orders to pay Plaintiffs'
costs of bringing prior discovery motions."  (Ct. Rec. 507).

Also, the Court notes that Global Defendants failed to file any responses to
Plaintiffs' various motions throughout this litigation.  The Global Defendants'
conduct tried the patience of the Court and indicated a lack of respect and candor
with the Court.  Their conduct hampered the ability of the Court to manage its
docket.  Accordingly, the public's interest in the expeditious resolution of this case

**ORDER ADDRESSING PENDING MOTIONS;**
**VACATING JUDGMENT** ~ 19

1   and the Court's interest in managing its docket weighs in favor of granting

2   Plaintiffs' motion for case dispositive sanctions.

3          Although the public has an interest in seeing the disposition of cases on the

4   merits, the merits cannot be reached unless the parties adhere to their discovery

5   obligations under Fed. R. Civ. P. 26. *See In re Phenylpropanolamine (PPA)*

6   *Products Liability Litigation*, 460 F.3d 1217, 1227 (9th Cir. 2006) (holding that a

7   party's failure to comply with deadlines and discovery obligations cannot move

8   forward toward resolution on the merits). Also, by failing to file exhibit and

9   witness lists for trial in compliance with the Court's order and local rules, the

10  Global Defendants have implicitly conceded that the case should not be decided on

11  the merits. The only evidence presented at trial will be Plaintiffs' evidence. Thus,

12  the public's interest in seeing the disposition of cases on the merits is lessened in

13  this case, as a result. Accordingly, this factor weighs in favor of granting

14  Plaintiffs' motion for case dispositive sanctions.

15         Finally, the Court considered the availability of and, in fact, imposed lesser

16  sanctions. On May 18, 2007, the Court imposed monetary sanctions and warned

17  Defendants that their continued failure to comply with the Court's orders could

18  result in other sanctions as determined by the Court (Ct. Rec. 458). Defendants

19  were forewarned that "continued noncompliance with this Court's orders may

20  result in case dispositive sanctions." (Ct. Rec. 458, p. 8).

21         Although the sanctions facing Defendants are now significant, initially they

22  were not. On March 12, 2007, the Court ordered Global Defendants to pay $400 to

23  Plaintiffs for the costs of bringing the Motion to Compel (Ct. Rec. 274). On

24  March 20, 2007, an additional $600 was assessed (Ct. Rec. 298). It was not until

25  April 19, 2007, that the Court imposed a $500 a day sanction, along with an

26  additional $1000 in costs (Ct. Rec. 458). Yet, rather than comply with the Court

27  order, Defendants ignored the Court's warnings and continued to withhold

28  discovery and payment of the sanctions. In response to the contempt hearing,

**ORDER ADDRESSING PENDING MOTIONS;**
**VACATING JUDGMENT ~ 20**

Defendant Orian submitted an unsupported conclusory statement that Defendant Global Horizon did not have the money to pay. Defendant Orian did not provide any financial statements in support of his claim, nor did he indicate to the Court that he personally did not have the financial means to pay the Court ordered sanctions. Accordingly, the Court finds Defendants' failure to pay the Court imposed sanctions willful. Moreover, Defendants have been repeatedly warned that they could face case dispositive sanctions if they failed to comply with the Court's discovery orders.

The Court finds that the Global Defendants' failure to comply with the Court's discovery orders, and the failure to pay any of the Court imposed sanctions constitutes willful conduct, and as such, Plaintiffs' motion for case dispositive sanctions is granted. *See Stars' Desert Inn Hotel*, 105 F.3d at 524. Default judgment as the liability portion of the remaining claims against the Global Defendants is granted.

The Court will permit the Global Defendants to participate in the trial, but only as to the issue of damages. The Court notes, however, that the Global Defendants failed to file their exhibit and witness lists, which precludes them from introducing any evidence as to damages.

**III.   Court-Ordered Sanctions**

On July 11, 2007, the Court ordered Defendants Global Horizons, Inc., and Mordechai Orian to pay to the Court the monetary sanctions previously imposed on May 18, 2007, in the amount of $12,500.00 (Ct. Rec. 458), as well as the additional amount of $27,000.00, calculated at $500 per day for each calendar day since the initial imposition of sanctions to the date of that order, for Defendants' continued refusal to comply with the Court's orders. (Ct. Rec. 507). The Court additionally noted that monetary sanctions, in the amount of $500 a day, for each calender day, would continue until the Global Defendants provided full payment to the Court. *Id.*

**ORDER ADDRESSING PENDING MOTIONS;
VACATING JUDGMENT** ~ 21

1    A declaration submitted by Global Defendants' counsel on July 19, 2007,

2    indicated that the Global Defendants had still not fully complied with the Court's

3    discovery orders, nor with the Court's directive to pay sanctions.  (Ct. Rec. 519).

4    A contempt hearing was held on August 1, 2007.  (Ct. Rec. 577).  At the contempt

5    hearing, the Court ordered Defendants Global Horizons, Inc., and Mordechai Orian

6    to pay the sanctions levied by the Court on July 11, 2007.  The Court indicated that

7    monetary sanctions, in the amount of $500 a day, for each calender day, would

8    continue until these Defendants fully complied.

9        It appears from recent pleadings that the discovery that has been the focus of

10   the Court's orders has been produced.  (Ct. Rec. 566; Ct. Rec. 568, p. 9; Ct. Rec.

11   590).  Accordingly, the Court imposes an additional $6,000.00 in sanctions against

12   Defendants Global Horizons, Inc., and Mordechai Orian, calculated at $500.00 per

13   day for each calendar day from July 11, 2007, to July 23, 2007, the date of

14   apparent compliance with the Court's discovery orders.  The order of continued

15   monetary sanctions, in the amount of $500 per day for each calendar day (Ct. Rec.

16   458, 507), is discontinued as of July 23, 2007.

17   **IV.    Possible Evidentiary Sanctions**

18       It is possible that the failure to provide discovery and adhere to the Court's

19   orders has prejudiced Plaintiffs with respect to their presentation of evidence on

20   the issue of damages, and a specific sanction may be appropriate.  At this point,

21   however, it is not clear whether the Global Defendants' discovery failures have

22   affected Plaintiffs' ability to present evidence on damages.  Should Plaintiffs wish

23   to present the specific sanction they seek, along with the specific discovery failure

24   that justifies such a sanction, they should file a motion within **five (5) calendar**

25   **days** from the date of this order.  Defendants' response is due within **five (5)**

26   **calendar days** of receiving Plaintiffs' motion, and Plaintiffs' reply is due within

27   **three (3) calendar days** of receiving Defendants' response.  Plaintiffs shall note

28   the hearing for **August 28, 2007**, at **10:00 a.m.**, in **Yakima, Washington.**

**ORDER ADDRESSING PENDING MOTIONS;**
**VACATING JUDGMENT ~ 22**

**V.    Jury Trial**

A jury trial is set for **September 10, 2007,** at **9:00 a.m.**, in **Y**akima, **Washington.**  According to the Court's review of the record, the remaining claims that need to be addressed by the jury are:

**1.    Green Acres and Valley Fruit Orchards**

a.  Plaintiffs' claim for racial discrimination under 42 U.S.C. § 1981, including liability and damages;

b.  Plaintiffs' claim for unlawful discrimination, in violation of the Washington Law Against Discrimination, including liability and damages; and

c.  Plaintiffs' claim for willful withholding of wages, in violation of Wash. Rev. Code § 49.52.050, including liability and damages.

**2.    Global Defendants**

a.  Amount of damages for racial discrimination under 42 U.S.C. § 1981;

b.  Amount of damages for unlawful discrimination, in violation of the Washington Law Against Discrimination; and

c.  Amount of damages for willful withholding of wages.

Plaintiffs shall notify the Court within **five (5) calendar days** from the date of this order if they do not wish to proceed with the jury trial on the remaining claims.  If Plaintiffs choose to forego the jury trial on these remaining claims, the Court will hold a bench trial to determine damages for the FLCA violations on that day.  Otherwise, the bench trial on damages will immediately follow the jury trial.

The parties shall submit their trial brief and jury instructions, according to the Court's Scheduling Order (Ct. Rec. 328).

Accordingly, **IT IS HEREBY ORDERED:**

1.  Plaintiffs' Motion to Compel (Ct. Rec. 448) is **DENIED,** as moot.

2.  Plaintiffs' Motion for Case Dispositive Sanctions (Ct. Rec. 509) is **GRANTED**.

3.  Plaintiffs' Motion to File an Over Length Trial Brief (Ct. Rec. 521) is

**ORDER ADDRESSING PENDING MOTIONS;**
**VACATING JUDGMENT ~ 23**

1    **GRANTED**.

2         4.    Defendants Green Acre Farms, Inc.'s and Valley Fruit Orchards'

3    Motion for Reconsideration and/or Relief from Judgment (Ct. Rec. 524) is

4    **GRANTED**.

5         5.    The Global Defendants' Motion for Reconsideration and Alternatively

6    Relief from Default Orders (Ct. Rec. 535) is **DENIED**.

7         6.    Plaintiffs' Motion to File an Over Length Responsive Memorandum (Ct.

8    Rec. 552) is **GRANTED**.

9         7.    The Judgment entered on July 11, 2007, (Ct. Rec. 508) is **VACATED**.

10        **IT IS SO ORDERED.**  The District Court Executive is directed to enter this

11   Order and to provide copies to counsel.

12        **DATED** this 10th day of August, 2007.

13                         *S/ Robert H. Whaley*

14                         ROBERT H. WHALEY
                          Chief United States District Court

15

16

17

18

19   Q:\CIVIL\2005\Perez-Farias, et al\motions.ord2.wpd

20

21

22

23

24

25

26

27

28

**ORDER ADDRESSING PENDING MOTIONS;**
**VACATING JUDGMENT ~ 24**