UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| JOSE GUADALUPE PEREZ-FARIAS, et al., | ) ) ) | NO. CV-05-3061-RHW |
| Plaintiffs, | ) ) | REPORT AND RECOMMENDATION |
| vs. | ) ) | |
| GLOBAL HORIZONS, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## **BACKGROUND**

On July 2, 2008, Mordechai Orian ("Orian") the president and chief strategic officer for Global Horizons, Inc. ("Global") appeared pursuant to the Court's order to show cause why Global has failed to obey the Court's orders to pay assessed monetary sanctions. Global's *pro hac vice* counsel, Chrystal Bobbitt, also appeared and addressed the Court.

The matter before the Court arises out of Global's abuse of the judicial process. Magistrate Judge Leavitt administered daily monetary sanctions against Global, payable to the Court, beginning on April 23, 2007. (Ct. Rec. 458). On July 11, 2007, Judge McDonald continued the enforcement of the daily sanctions set by Judge Leavitt. (Ct. Rec. 507). Judge Whaley also continued the enforcement of the daily sanctions and indicated the end of the daily toll, as of July 23, 2007. (Ct. Rec. 597). Global has made

REPORT AND RECOMMENDATION ~ 1

1  no payment to the Court as directed by these judges.

2      On April 21, 2008, Judge Whaley referred to this Magistrate

3  Judge the matter of Global's failure to obey the orders of this

4  Court to pay the assessed monetary sanctions. (Ct. Rec. 871).  On

5  April 22, 2008, the Court ordered Global Horizons, Inc. to pay the

6  previously ordered monetary sanctions no later than May 30, 2008.

7  (Ct. Rec. 874).  The Court further ordered that should Global fail

8  to make timely payment to the Court, Global, by and through its

9  attorney, would be required to appear before the undersigned and

10 show cause why it has failed to obey the Court's orders to pay

11 monetary sanctions and why the monetary sanctions should not be

12 reduced to a judgment. (Ct. Rec. 874).  Global did not make

13 payment to the Court on or before May 30, 2008.  At a show cause

14 hearing on June 3, 2008, Global's local counsel, Gary Lofland,

15 appeared and reported he had no knowledge to answer a majority of

16 the Court's questions regarding Global's financial status.  The

17 Court was not satisfied with Global's presentation at the show

18 cause hearing.  The Court directed Mordechai Orian, the individual

19 identified by Global's counsel as most knowledgeable about

20 Global's finances, to appear at a supplemental show cause hearing.

21 (Ct. Rec. 893).  The supplemental show cause hearing was held on

22 July 2, 2008.  (Ct. Rec. 900). Additional documentation was

23 furnished by Global to the Court on July 16, 2008.

24     By way of history, on March 12, 2007, the Court entered an

25 order granting Plaintiffs' motion to compel discovery and for

26 sanctions against Global Horizons, Inc. (Ct. Rec. 274).  Global

27 failed to respond to Plaintiffs' motion.  The Court ordered

28 Defendant "Global Horizons, Inc." to pay Plaintiffs' $400.00 and

to produce all documents requested in Plaintiffs' Third Set of
Requests for Production #11 and #12 and Plaintiffs' Fourth Set of
Requests for Production #6 as well as other information in
Global's possession.  (Ct. Rec. 274).  Global did not timely
produce that documentation.

On March 20, 2007, the Court entered another order granting
Plaintiffs' motion to compel discovery and for sanctions against
Global.  (Ct. Rec. 298).  Global again failed to respond to
Plaintiffs' motion.  The Court ordered Defendant "Global Horizons,
Inc." to pay Plaintiffs $600.00 and ordered production.  Global,
again, did not produce that documentation within the time frame
ordered by the Court.

On April 19, 2007, the Court ordered Defendant "Global
Horizons, Inc." to produce all documents, as previously ordered,
by April 23, 2007.  (Ct. Rec. 404).  The Court ordered Global to
pay Plaintiffs $1,000.00 for the cost of bringing the motion and
to pay Plaintiffs the $1,000.00 previously imposed by the Court.
The Court further warned "Defendant Global Horizons, Inc." that
the failure to comply with this order shall result in sanctions,
in the amount of $500.00 a day, each calender day, until it had
fully complied with the Court's orders.

On May 18, 2007, the Court ordered "Defendants," defined by
the Court in that order as "Global Horizons, Inc., and Mordechai
Orian," to pay sanctions for the failure to produce all documents
ordered to be produced.  (Ct. Rec. 458).  Global and Mordechai
Orian were ordered to produce all documents previously ordered to
be produced, pay to Plaintiffs $2,000.00 for the costs that were
previously imposed, pay to Plaintiffs $1,000.00 for the cost of

bringing the latest motion, and pay to the Court sanctions in the amount of $12,500.00, calculated at $500.00 per day for each calendar day from April 23, 2007 to May 18, 2007. (Ct. Rec. 458). Defendants were warned that their continued failure to comply with this Court's orders would result in continued monetary sanctions, in the amount of $500.00 a day, for each calender day, until there was full compliance, and could result in case dispositive sanctions. (Ct. Rec. 458). On June 1, 2007, the Court received a declaration of Defendant Mordechai Orian which stated, "Global Horizons, Inc., does not have $15,000 to pay to the Court or to the Plaintiffs in this matter." (Ct. Rec. 491 at 2).

On July 11, 2007, Judge McDonald entered an order requiring Global Defendants to comply with the earlier monetary sanctions order of the Court and assessed additional, and continuing, monetary sanctions for their continued disobedience. (Ct. Rec. 507). The Court ordered Defendants Global Horizons, Inc., and Mordechai Orian to pay to the Court the monetary sanctions previously imposed on May 18, 2007, in the amount of $12,500.00 (Ct. Rec. 458), as well as the additional amount of $27,000.00, calculated at $500.00 per day for each calendar day since the initial imposition of sanctions to the date of that order, for Defendants' continued refusal to comply with the Court's orders. (Ct. Rec. 507). The Court further noted that monetary sanctions, in the amount of $500.00 a day, for each calender day, would continue until the Global Defendants provided full payment to the Court. (Ct. Rec. 507). Mr. Orian was warned that if he did not make payment to the Court, he would be required to appear before the Court to face a charge of criminal contempt.

On July 31, 2007, Defendant Mordechai Orian filed a declaration in opposition to criminal contempt. (Ct. Rec. 565). The declaration commented on the financial struggles of Global and indicated that Global could not afford to pay the sanctions assessed. (Ct. Rec. 565). Mr. Orian also indicated surprise that the sanctions were assessed against him individually.

On August 1, 2007, a contempt hearing was held. (Ct. Rec. 577). At the contempt hearing, the Court ordered Defendants Global Horizons, Inc., and Mordechai Orian to pay the sanctions levied by the Court on July 11, 2007. The Court indicated that monetary sanctions, in the amount of $500.00 a day, for each calender day, would continue until these Defendants fully complied. (Ct. Rec. 577).

On August 10, 2007, the Court assessed an additional $6,000.00 in sanctions against Global Horizons, Inc., and Mordechai Orian, calculated at $500.00 per day for each calendar day from July 11, 2007 to July 23, 2007. (Ct. Rec. 597). The Court also discontinued the daily monetary sanctions as of July 23, 2007, due to the Global Defendants' apparent compliance with the Court's discovery orders on that date. (Ct. Rec. 566; Ct. Rec. 568 at 9; Ct. Rec. 590). The order of continued monetary sanctions, in the amount of $500.00 per day for each calendar day (Ct. Rec. 458, 507), was discontinued as of July 23, 2007. (Ct. Rec. 597).

On September 7, 2007, the Court reviewed its previous orders assessing sanctions against Global and Mordechai Orian. (Ct. Rec. 700). The Court noted that the compelled discovery was directed solely at Global. The Court found no basis for holding Mordechai

1   Orian personally responsible for the monetary sanctions imposed at
2   that time.  Accordingly, the Court released Mordechai Orian from
3   his individual obligation to pay all previously imposed monetary
4   sanctions.  However, the Court held that Global remained
5   responsible for the sanctions previously imposed by the Court.
6   (Ct. Rec. 700 ¶ 10).

7                    **DISCUSSION/FINDINGS OF FACT**

8        The purpose of the Court's July 2, 2008, show cause hearing
9   was to ascertain if Global was still a viable corporate entity and
10  to decide if it had had the financial wherewithal to pay any of
11  the sanctions from the time the Court first imposed those
12  sanctions beginning in April, 2007.

13       The Court had ordered Global to produce certain documents
14  that reflected its most current financial condition in advance of
15  the show cause hearing. Global's representatives did provide
16  certain documents, albeit incomplete. Counsel for Global agreed to
17  fax additional documents to the Court immediately so that the
18  documents would be complete. Those additional documents, still
19  incomplete, were finally furnished on July 16, 2008.

20       Global's President and Chief Strategic Officer, Orian, after
21  being placed under oath, testified for approximately 90 minutes in
22  response to questions asked of him by the Court. At the conclusion
23  of his testimony, Counsel for Global made a record as to reasons
24  there had not been any effort to pay the sanctions.

25       Global Horizons Inc. was incorporated by Orian in 1997. Its
26  principal business is/was labor contracting.  The corporate stock
27  is owned 49% by Orian and 51% by Global Manpower LTD, an Israeli
28  entity. Global Manpower LTD is an entity that Orian and a woman

named Lebi Sigal control. Global Manpower LTD has not been active for the past four to five years. Throughout Global's existence, Orian has been the nominal head of the corporation and is responsible for making its day-to-day business decisions. Global's officers are Orian and Robin Rutt. Mr. Rutt served as the chief financial officer of Global but is no longer associated with Global and his whereabouts is unknown.

Global was debarred by the U.S. Department of Labor in November, 2006 for a period of three years from further H-2A labor certification applications. This debarment order resulted in the cancellation or repudiation of several labor contracts that Global might have profited from by performing.

Global's assets, according to its most recently filed Federal Income Tax return for the fiscal year ending November, 2006, consist of trade notes and accounts receivable, depreciable personal property (mostly vehicles) and "other". Orian speculated that "other" was some variety of account receivable but was unable to further clarify or explain and did not furnish the appropriate schedules from the income tax return to the Court for explanation. Orian testified that the corporation does not own, nor has it ever owned any real property. The Federal Income Tax return is also notable for the sale of accounts receivable to Del Monte in the sum of $1.8 million treated in the tax return as long term capital gain. No later Federal Income Tax returns have been filed by Global according to the evidence before the Court.

The Court also examined documents produced by Global described as payroll records. It is significant that Global employees continued to receive salaries despite the corporation's

stated insolvency.  No fewer than seven Global employees, including Orian, are shown to have received pay during all of 2007 and most of those received pay during 2008.  Gross salaries paid during the month of December, 2007 exceeded $20,000 to "Global" employees.  Orian explained that although Global has been defunct since May of 2007, he has personally contributed funds to pay employees.  Additionally, a different corporation, also totally owned and controlled by Orian named Digital Global Accounting, currently provides the payroll checks for all employees, including Ms. Bobbitt, the "In House Litigation Counsel at Global Horizons".  Orian testified that the payroll approaches $30,000.00 per month.  The corporate office remains open.  Outside counsel continue to be retained.  Multiple litigation matters continue to be addressed and vigorously contested.

The Court was provided with copies of Global's bank statements for the period from May 1, 2007 through September 28, 2007.  These statements represent the main operating account at Bank of America, account number 13970244.  This account was linked to at least two savings accounts and a payroll account.  None of the statements of the linked accounts were furnished to the Court.  Orion had signature power on these accounts.  Bank of America closed this account in November 2007.

An examination of these bank statements yields tributaries of information that lead to one ocean of a conclusion: During this period of self described insolvency and before closing its bank account, Global had funds deposited to its operating accounts that would have been more than sufficient to pay the Court imposed sanctions had the corporation chosen to apply those funds to that

obligation and not elsewhere.

Several specific entries in the bank statements illustrate this conclusion.

(1) Multiple wire transfers in May 2007 were made from the operating account after sanctions began to be imposed to an entity called "Adoption Worldwide LLC". These "contributions" or "loans" (as Orian calls them)amounted to a total of $9,000.00.  As it turns out, Adoption Worldwide LLC is a favorite charity of Orian, one that he helped to found and supports, apparently to the detriment of paying legitimate corporate creditors.

(2) A purchase on a debit card on 5/14/2007 for $241.58 to Ralph's, a grocery store in California.  Orian says he authorized food to be bought for his employees "many times."  He denies this purchase of food was for him personally, but a closer examination of the records might yield information supporting a conclusion that Orian was using the accounts for his personal purposes and was commingling his funds with those belonging to the corporation.

(3) An online banking transfer on 6/15/2007 for $20,000.00 to savings account 2487.  At this point in time, there would have been no need to "save" anything since the business was closed and insolvent, according to Orian.

(4) On 6/29/2007 a wire transfer into the account was made from Digital Global Accounting in the sum of $47,000.00.  Orian explained that this was likely for payroll, but again the corporation, acting through its Chief Strategic Officer, made a decision to pay other corporate obligations and ignore the sanctions that had been imposed by the Court.

There are numerous other instances of funds being transferred

-9-

between and among the various linked bank accounts.  Orian is a very experienced and shrewd international businessman and it is beyond the time constraints allowed this Court to delve into each transaction of Global and Orian's related companies that might shed light, rather than continued heat, on the issue of collection of the sum due the Court.

Global is also subject to a large federal tax lien amounting to somewhere in the neighborhood of $4 million.  A judgment of $819,686 was entered against Global on May 25, 2007 in the District Court of Maryland.  There are numerous other judgments, liens and assessments against Global in other jurisdictions.

When Global began doing business in Washington state, the State required it to post a corporate surety bond.  This bond was obtained through Platte River Insurance Company and Orian believed it to be in the amount of $150,000.  Platte River Insurance Company is a named defendant in this case. It is unknown if this bond is available to respond to the Court's sanction orders.

Global has not filed for bankruptcy. Orian testified that he did not want to do so, since the cost of hiring counsel would be prohibitive and since there were no corporate assets remaining for creditors to seize.

### RECOMMENDATIONS/CONCLUSIONS OF LAW

Global is financially insolvent. Its debts far exceed its assets and it is unable to meet its daily obligations of business. Orian has made cash infusions of his own and others to Global in order to keep the business operating, but any business of Global is now being run through the books and records of Digital Global Accounting, Inc. Funds were routinely being wire transferred

between Global and Digital Global Accounting, Inc. during the months for which bank statements were furnished.

Global has failed and refused to pay any or all of the sanctions determined to be owed by this Court. Global's arguments that Judge Whaley never addressed the corporation's responsibility to pay the sanctions in his September 7, 2007 order are without merit. The corporation's responsibility to pay the sanctions is now and has for many months, been clear. Furthermore, Global had the financial means to pay all of the sanctions imposed at and after the time those sanctions were first imposed. Global cannot avoid its obligation to pay even if it did not have the money to pay in a single payment. <u>Sec v. Musella</u>, 818 F.Supp. 600,602 (S.D.N.Y. 1993).

The Court cannot determine on the record before it whether Global is the "alter ego" of Orian to the extent that the corporate veil should be pierced and his personal assets should be made available to respond to the sanctions imposed. It is the recommendation of this Magistrate Judge that the sanctions be reduced to a judgment in the sum of $45,500.00 against Global Horizons, Inc. and that counsel be employed to assist the Court in making that determination and in assisting the Court in collecting the judgment if reaching Orian's personal assets is deemed feasible.

Further civil contempt proceedings against the corporation would not be fruitful. Civil contempt sanctions are remedial. <u>United Mine Workers v. Bagwell</u>, 512 U.S. 812, 828 (1994). This Court has already imposed daily or per diem fines against the corporation. Although Orian has not been totally forthcoming with

the documents requested of him as Chief Strategic Officer, he did comply with the Court's Order to Show Cause by making himself available to testify. This Court has already released Orian from any obligation to pay the sanctions imposed against the corporation personally. Court Record 700 ¶ 10.

Since Orian, on behalf of Global, insists on continuing to defend the instant litigation, this Magistrate Judge would recommend that the Court consider imposing case dispositive sanctions against Global unless the total amount of sanctions is paid.

The record of the show cause examination and the exhibits admitted into evidence during Orian's examination have been sealed.  It is the recommendation that the record be unsealed and made available to the other parties in this litigation.

### OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within ten (10) days following service with a copy thereof.  Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor.  Any response to the objection shall be filed within ten (10) days after receipt of the objection.  Attention is directed to Fed. R. Civ. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject, or modify the magistrate judge's determination.  The judge need not conduct a new hearing or hear arguments and may consider the

magistrate judge's record and make an independent determination thereon.  The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions.  *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMR 4, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to file this Report and Recommendation and provide copies to counsel and the referring district judge.

**DATED** this  21st  day of July, 2008.

                        *S/James P. Hutton*
                        JAMES P. HUTTON
                        UNITED STATES MAGISTRATE JUDGE