1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF WASHINGTON
7
8    JOSE GUADALUPE PEREZ-
     FARIAS, JOSE F. SANCHEZ,
9    RICARDO BETANCOURT, and all          NO.  CV-05-3061-RHW
     other similarly situated persons,
10
         Plaintiffs,                       **FINDINGS OF FACT AND
11                                         CONCLUSIONS OF LAW**
         v.
12
     GLOBAL HORIZONS, INC., *et al.*,
13
         Defendants.
14

15       A bench trial on statutory damages was held in Yakima, Washington on

16   March 3, 2009.  Plaintiffs were represented by Lori Isley, Richard Kuhling, and

17   Joe Morrison.  The Grower Defendants were represented by Ryan Edgely and

18   Brendan Monahan.  The Global Defendants were represented by Matthew Gibbs

19   and local counsel Gary Lofland.[1]

20                        **PROCEDURAL BACKGROUND**

21       Plaintiffs filed their class action in May, 2006.  On July 28, 2006, Judge

22   Leavitt certified the class and also bifurcated the trial, separating the liability and

23   damages issues.  Magistrate Judge Michael Leavitt died before ruling on the

24   substantive motions on liability and damages.  Judge Alan McDonald took over the

25   case.

26       On July 11, 2007, Judge McDonald granted Plaintiffs' Motion for Partial

27   ────────────────
28       [1]At the beginning of the proceedings, the Court excused Mr. Lofland's
     presence at the bench trial.

     **FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 1**

Summary Judgment, finding that Defendants violated the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA") and the Washington Farm Labor Contract Act ("FLCA"), and awarding statutory damages under FLCA.  None of the Defendants had filed a responsive brief to Plaintiffs' Motion for Partial Summary Judgment.  The brief available to Judge McDonald did not cite to relevant Ninth Circuit case law with respect to the awarding of statutory damages. Defendants filed Motions for Reconsideration of Judge McDonald's order alleging excusable neglect as grounds for failing to respond to the Partial Summary Judgement motions.  Judge McDonald died before considering the Motions for Reconsideration.  This Court ruled on these motions and has handled the case thereafter.

On August 10, 2007, this Court vacated the Judgment with respect to the amount of damages, based on its consideration of relevant Ninth Circuit case law that had not been cited to Judge McDonald (Ct. Rec. 597).  The Court did not vacate the portion of Judge McDonald's Order that found that Defendant Global committed the alleged violations of the FLCA and the AWPA.  Instead, the Court vacated the award of statutory damages in the amount of $500 per violation per person.

Judge McDonald did not rule on Plaintiffs' claims of racial discrimination and failure to provide work.  These claims were tried to a jury in September, 2007. The jury found that Defendant Global Horizons and Defendant Mordechai Orian violated the Farm Labor Contractors Act by failing to employ, or discharging or laying off members of the subclasses, and discriminated against the subclasses because of their race (Ct. Rec. 747).  The jury awarded $300,000 in punitive damages to the class and awarded the following damages to the representative Plaintiffs: Ricardo Betancourt: $5099.50 for lost wages, $2500.00 for emotional distress; Jose F. Sanchez: $492.20 for lost wages, $5,000.00 for emotional distress; Jose Guadalupe Perez-Farias; $0.00 for lost wages, $4,000.00 for emotional

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 2**

distress.  Judgment was entered on October 23, 2007, consistent with the jury findings.

In March 27, 2009, the Court entered its Findings of Fact and Conclusions of Law on Plaintiffs' Claims Against Grower Defendants (Ct. Rec. 863).  The Court also addressed the Global Defendants' Post-Trial Motions.  The Court upheld the jury verdict with respect to the discrimination claim against Global and Mordechai Orian.  The Court held that the evidence was sufficient to uphold the FLCA claims asserted against Global, but found as a matter of law that Mordechai Orian could not be held individually liable for violations of the FLCA.

On May 23, 2008, the judgment was amended and the Denied Work Subclass definition used was:

> U.S. Resident farm workers who claim they were offered employment by Global Horizons to work at Green Acre Farms, Inc. or Valley Fruit Orchards, LLC in 2004, but were not employed by Global Horizons in 2004.

(Ct. Rec. 884).[2]

## CLASS DEFINITION

On July 28, 2006, Judge Leavitt granted Plaintiffs' Motion for Class Certification (Ct. Rec. 136).  Judge Leavitt certified the Denied Work subclass using the following definition.

> U.S. Resident Workers: All farm workers living in the United States (with the exception of guest workers) who applied, or who may apply in the future, at Global Horizons for agricultural employment in Washington State at Green Acres or Valley Farm.

> Denied Work Subclass:  All farm workers living in the United States (with the exception of guest workers) who applied, or who may apply

---

[2]The judgment was amended to address the concern that the proposed amendment could be read broadly to include farm workers offered work by Global with other employers or in other states and during periods of time other than 2004. Although Global now maintains that the Court did not consider its objections to the proposed amendment, it is clear from the briefing that Global did not object to the amending of the judgment for this purpose. *See* Ct. Rec. 876.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 3**

in the future, at Global Horizons for agricultural employment in Washington State at Green Acres or Valley Farm.

As set forth above, a different Denied Work subclass definition was used at trial. For ease of use, the Court will refer to Judge Leavitt's definition as the Denied Work - Applied subclass and to the definition used at the jury trial as the Denied Work - Offered subclass. The subtle distinction between the two means that anyone who applied is a member of the Denied Work - Applied subclass, while only those Denied Work - Applied subclass members who were offered work are members of the Denied Work-Offered subclass.

In reviewing Plaintiffs' proposed class membership list and corresponding methodology for identifying class members, it appears that the distinction between the two class definitions affects nine potential class members. These nine people were listed on Global's Exhibit A, but were unable to provide any additional information that would indicate that they received a job offer. Plaintiffs ask the Court to presume that these persons were offered work based on the inconsistencies within Global's records.

Neither Defendant objected to the inclusion of these nine persons in the Denied Work - Offered subclass. Because of this, and because of the inconsistencies within Global records, the Court concludes that these nine members should be included in the Denied Work-Offered subclass.

### IDENTIFICATION OF CLASS MEMBERS

**A.    Denied Work Subclass**

In support of Plaintiffs' Phase II Memorandum on Class Membership, Injunctive Relief & Damages, Plaintiffs submitted Exhibit A, which was Plaintiff's summarization of Global's Exhibit A. Plaintiffs' Exhibit A included 402 purported Denied Work Subclass members.

The Grower Defendants did not file any objection to Plaintiffs' Exhibit A. The Global Defendants objected to the admission of Plaintiffs' Exhibit A. In reply to the Global Defendants' objections, Plaintiffs clarified which exhibits they

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 4**

intended to seek admission.  Plaintiffs indicated that they no longer intended to seek the admission of the summary charts and would use the summary  Exhibits for demonstrative purposes only.  Plaintiffs did submit Plaintiffs' Exhibit A - Amended.  In reviewing the data, Plaintiffs were able to identify duplicates, as well as identify additional class members.  Exhibit A - Amended lists 399 Denied Work Subclass members.

At the hearing, Global's only objections to Exhibit A - Amended related to the accuracy of some of the social security numbers.  The Court finds Exhibit A - Amended reliable and adopts Plaintiffs' identification of class members contained in Plaintiffs' Exhibit A - Amended.  In Plaintiffs' Amended Exhibit T, Plaintiffs indicate there are 397 members of the Denied Work subclass.  This number does not include those subclass members who opted out of damages.  The Court will award damages based on 397 Denied Work  Subclass members.

**B.    Green Acre Subclass**

In support of Plaintiffs' Phase II Memorandum on Class Membership, Injunctive Relief & Damages, Plaintiffs submitted Exhibit K, which is a summary that contains a list of purported Green Acre subclass members and the criteria used to determine class membership.  Plaintiffs relied on Global's Exhibit B, Exhibit 50, wage and hour records, crew lists, and other miscellaneous documents to establish class membership.

The Defendants did not lodge specific objections to Plaintiffs' list.  The Court concludes that the individuals listed in Plaintiffs' Exhibit K are presumptively members of the Green Acre Subclass.  In Plaintiffs' Amended Exhibit T, Plaintiffs indicate there are 107 members of the Green Acre Subclass. The Court will award damages based on 107 members of the Green Acre Subclass.

**C.    Valley Fruit Subclass**

In support of Plaintiffs' Phase II Memorandum on Class Membership, Injunctive Relief & Damages, Plaintiffs submitted Exhibit P, which is a summary

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 5**

that contains a list of purported Valley Fruit Subclass members and the criteria used to determine class membership.  Plaintiffs relied on Global's Exhibit B, Exhibit 50, Trial Exhibit 38, wage and hour records, and timesheets to establish class membership.

The Defendants did not lodge specific objections to Plaintiffs' list.  The Court concludes that the individuals listed in Plaintiffs' Exhibit P are presumptively members of the Green Acre Subclass.  In Plaintiffs' Amended Exhibit T, Plaintiffs indicate there are 146 members of the Valley Fruit Subclass. The Court will award damages based on 146 members of the Valley Fruit Subclass.

**STATUTORY DAMAGES**

In its Order Vacating Judgment, the Court concluded that under the clear language of Wash. Rev. Code § 19.30.170(2), the Court has discretion to decide whether to award damages, either actual or statutory, or other equitable relief, or to decide not to award damages even if a violation has occurred, and significantly, the Court has discretion to award statutory damages of less than $500 per violation.

In determining the appropriate amount of statutory damages, the Court indicated that it would look to the Ninth Circuit case of *Six(6) Mexican Workers* for guidance.[3]  *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990).  In that case, the Circuit instructed district courts to consider the following factors in determining whether a particular award serves the statute's deterrence and compensation objectives:  (1) the amount of award to each plaintiff;

---

[3]The *Six (6) Mexican Workers* case addressed the federal Farm Labor Contractor Registration Act (FLCRA).  Because § 19.30.170(2) has never been interpreted by an appellate court in the state of Washington, the parties agreed that it is proper for this Court to look to federal court decisions interpreting the analogous provision of AWPA or FLCRA.  *See also Escobar v. Baker*, 814 F.Supp. 1491 (W.D. Wash. 1993).

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 6**

(2) the total award; (3) the nature and persistence of the violations; (4) the extent of the defendant's culpability; (5) damage awards in similar cases; (6) the substantive or technical nature of the violations; and (7) the circumstances of each case. *Id.* at 1309.

FLCA and AWPA are two statutes that attempt to address the same problem, namely the protection of farmers and farm workers against exploitation by farm labor contractors by requiring the disclosure of terms and conditions of employment and through registration of contractors and regulation of their activities. Wash. Rev. Code § 19.30 *et seq*; 7 U.S.C. § 2041. Although the authority applying the federal statutes is instructive, it is not binding on this Court. Notably, there are significant differences between FLCA and AWPA. First, AWPA requires that before awarding any damages, the Court must find that the defendant intentionally violated the provisions. 29 U.S.C. § 1854(c).[4] Second, AWPA limits damages for multiple infractions of a single provision to only one violation for purposes of determining the amount of statutory damages. Finally, if

---

[4]U.S.C. § 1854(c) provides:

If the court finds that the respondent has intentionally violated any provision of this chapter or any regulation under this chapter, it may award damages up to and including an amount equal to the amount of actual damages, or statutory damages of up to $500 per plaintiff per violation, or other equitable relief, except that (A) multiple infractions of a single provision of this chapter or of regulations under this chapter shall constitute only one violation for purposes of determining the amount of statutory damages due a plaintiff; and (B) if such complaint is certified as a class action, the court shall award no more than the lesser of up to $500 per plaintiff per violation, or up to $500,000 or other equitable relief.

(2) In determining the amount of damages to be awarded under paragraph (1), the court is authorized to consider whether an attempt was made to resolve the issues in dispute before the resort to litigation.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 7**

1    a class action is pursued, damages are capped at $500,000.[5]

2    There is little Ninth Circuit precedent that has addressed the awarding of

3    statutory damages under AWPA or FLCRA.  Notably, although one of the factors

4    the Court should consider is whether the violation is technical or substantive in

5    nature, no court has attempted to define or explain these terms.

6    Courts have recognized, however, that technical violations should result in

7    less damages, whereas substantive violations have been awarded greater amounts.

8    The Seventh Circuit, in *De La Fuente v. Stokely-Van Camp, Inc.*, concluded that

9    the failure to post a written statement of the terms and conditions of employment,

10   and the failure to give the workers clearance orders in Spanish were technical

11   violations of FLCRA.  713 F.2d 225, 239-40 (7th Cir. 1983).  Recently, Judge

12   Sharp of the District Court of Northern Indiana awarded a total of $16,950 to four

13   plaintiffs and two minor children. *See Martinez v. Mendoza*, 595 F.Supp.2d 923,

14   928 (N.D. Ind. 2009).  In that case, it appears that Judge Sharp awarded $100 for

15   each technical violation per plaintiff and $500 per plaintiff for those violations that

16   directly and adversely affected the plaintiffs.  For instance, he awarded $100 per

17   plaintiff per violation of 29 U.S.C. § 1811(a) (failure to register ); § 1821(b)

18   (failure to provide written disclosures); § 1821(c) (failure to post in conspicuous

19   

20        [5]Additionally, although other circuits have concluded that statutory damages

21   under AWPA are punitive in nature, the Ninth Circuit has specifically declined to

22   permit the imposition of a "penalty disproportionate to the offense."  *Six Mexican*

23   *Workers,* 904 F.2d 1301, 1309 (9th Cir. 1990); *Alvarez v. Longboy*, 697 F.2d 1333,

24   1320 (9th Cir. 1983).  It is not clear whether the Washington legislature intended

25   statutory damages under FLCA to be punitive.  Nevertheless, as discussed below,

26   Plaintiffs' interpretation of section 19.30.170(2) would necessarily result in a

27   punitive award because the amount of damages would have no relationship to the

28   harm caused by the wrongful conduct.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** ~ 8

place the rights and protections afforded workers under the AWPA); § 1821(d) (failure to post requirements imposed upon housing providers); § 1821(e) (failure to provide records); § 1822(c) (violation of terms of working arrangement); § 1843 (failure to provide written statement regarding working conditions); § 1823(b)(1) (failure to post certificate). The court awarded $500 per plaintiff per violation of 29 U.S.C. § 1821(d)(1) (failure to keep records); § 1821(d)(2) (failure to provide itemized written pay statements); § 1821(f) (knowingly provide false or misleading information); § 1821(a) (safety and health of housing); and § 1841(b) (vehicle / transportation safety).

Based on its review of the case law, the Court defines a technical violation as conduct that violates the plain language of the statute, but does not necessarily result in actual or specific harm to the worker. Substantive violations are conduct that violates the plain language of the statute and results in specific harm to the worker.

Plaintiffs initially argued to Judge McDonald that statutory damages under FLCA are mandatory, and courts must award $500 per class member per violation. As noted, no brief in opposition was filed. Based on Plaintiffs' briefing, Judge McDonald awarded $1,857,000.00 in statutory damages under FLCA. Plaintiffs now ask the Court to exercise its discretion and award statutory damages in the amount of $500 per class member per violation for a total award of $1,998,500.00. *See* Pl. Ex. T (Amended).

Plaintiffs' primary justification for the large award is its insistence that such an award is necessary to punish and deter future violations. At the hearing, the Court told the parties that an award of $500 per class member per violation may violate due process. The Court recognizes that the state of Washington possesses discretion over the imposition of statutory damages; nevertheless, any damage award must meet both procedural and substantive constitutional requirements. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). In the

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 9**

1  world of punitive damages, where the goals are punishment and deterrence, the
2  award of damages should be reasonably predictable in its severity. *Exxon Shipping*
3  *Co. v. Baker*, 128 S.Ct. 2605, 2627 (2008) ("The common sense of justice would
4  surely bar penalties that reasonable people would think excessive for the harm
5  caused in the circumstances."); *State Farm*, 538 U.S. at 416 (reasoning that
6  "[e]lementary notions of fairness enshrined in our constitutional jurisprudence
7  dictate that a person receive fair notice not only of the conduct that will subject
8  him to punishment, but also of the severity of the penalty that a State may
9  impose."). Moreover, it is recognized that while punitive damages may serve the
10 same purposes as criminal penalties, defendants subjected to punitive damages in
11 civil cases have not been accorded the protections applicable in a criminal
12 proceeding. *Id.* at 417.

13      Recently, the Ninth Circuit reviewed an award of punitive damages and
14 made the following observations. *See Southern Union Company v. James M. Irvin*,
15 2009 WL 792475 (9th Cir. Mar. 27, 2009). First, due process "prohibits the
16 imposition of grossly excessive or arbitrary punishments on a tortfeasor." *Id.* at
17 *2. Second, the objective of punitive damages is deterrence and punishment,
18 without being unreasonable and disproportionate. *Id.* Finally, the Circuit noted
19 that determining the constitutional limits with respect to punitive damages will
20 vary from case to case. *Id.* at *3. "Determining that limit is an art, not a science;
21 no mathematical formula controls; no single asymptote defines the limit for all
22 cases." *Id.*

23      The Court believes it must consider these due process concerns when
24 determining the appropriate amount of statutory damages under FLCA. In doing
25 so, the Court will consider (1) the degree of reprehensibility of the defendant's
26 misconduct; (2) the disparity between the actual or potential harm suffered by the
27 plaintiff and the statutory damages award; and (3) the difference between the
28 statutory damages authorized by FLCA and the civil penalties authorized or

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 10**

imposed in comparable cases.  *Id.*

The Court is also convinced that these same due process concerns reinforce the Court's interpretation that section 19.30.170(2) provides the Court with discretion to award no statutory damages, or to award less than $500 in statutory damages for each violation that was found by Judge McDonald.  For instance, Global put its address and phone number of the paycheck that was given to its employees, but did not place its name, address, and phone number on the detached pay stub.  Plaintiffs are seeking over $126,000.00 in statutory damages for Global's failure to put its name and address on the pay stub, even when no class member complained or was prejudiced by this omission.  Plaintiffs are seeking over $225,000.00 in statutory damages for Global's failure to explicitly provide production standards that in all practicality would have been technically useless given that production standards change daily based on wide variety of factors that are unique to the orchard industry.  These violations are technical violations and are in no way proportional to the harm that the Washington statute intended to prevent.  To say that the Court has absolutely no discretion but to award such exorbitant amounts of statutory damages would violate all notions of fairness inherent in our judicial system.

This case was preceded by an investigation by the Washington Department of Labor that ultimately resulted in a Settlement Agreement between the state of Washington, the Global Defendants and the Grower Defendants.  As part of the settlement process, Global admitted to violating Washington state and federal laws. (Ct. Rec. 467-3, Ex. G).  The state of Washington assessed $10,250.00 in penalties and $216,650.08 in wage assessments (Ct. Rec. 1081-2).[6]  Plaintiffs' complaint

---

[6]On April 9, 2009, the Global Defendants requested the Court to take judicial notice of the June 3, 2005 letter from the Washington Department of Labor and Industries that was relied upon by Mr. Gibbs during his argument at the

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** ~ 11

followed the State's investigation, alleging many of the same violations of state law.  The Court finds it significant that the state of Washington has vindicated the public's interest in deterring the wrongful conduct that occurred in 2004.  The investigation produced a significant record that was relied upon by Plaintiffs in developing their case.

The Court notes that with respect to the violation regarding the inadequate pay statements, the state of Washington assessed a $1000.00 penalty, yet Plaintiffs are seeking $500.00 for each member of the Green Acre and Valley Fruit subclass for a total of $126,500.[7]  Likewise, with respect to the violation regarding the

---

damages hearing (Ct. Rec. 1081-1).  Plaintiffs objected to Defendants' request for judicial notice (Ct. Rec. 1082).  Although Mr. Gibbs referred to this letter in his argument at the hearing, Plaintiffs did not object at that time.  Therefore, any objection to the use of the letter is waived.  Additionally, this letter was a culmination of an investigation conducted by the Department of Labor and Industries.  Documents from this investigation were relied upon heavily by Plaintiffs in support of their summary judgment motions and at the trial on liability.  Notably, this letter was included in Plaintiffs' Exhibits submitted to the Court in anticipation for the jury trial on liability.  *See* Pl. Trial Ex. 10.  Thus, it has been part of the Court's record since September, 2007.  Moreover, in their opposition, Plaintiffs argue that the Court should limit judicial notice to the fact that penalties were assessed for violations.  As set forth below, the Court is relying on the 2005 letter for that reason.  Finally, Plaintiffs are not disputing its authenticity, accuracy, or relevance of the letter.  For these reasons, the Court believes it is appropriate to take judicial notice of the 2005 letter.

[7]Wash. Rev. Code § 19.30.160 states:

(1) In addition to any criminal penalty imposed under RCW 19.30.150, the director may assess against any person who violates this chapter, or any rule adopted under this chapter, a civil penalty of not more than one thousand dollars for each violation.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 12**

unlawful deduction of Washington state income tax, the state of Washington assessed a $1000 penalty. As set forth above, Plaintiffs are seeking $500 for each member of the Green Acre and Valley Fruit subclass for a total of $126,500. Thus, where the state of Washington concluded that $2000.00 was an appropriate penalty for violations of FLCA, Plaintiffs are seeking over $250,000.00 in statutory damages.

Moreover, awarding Plaintiffs $1,998,500.00 in statutory damages as requested would not only punish the Grower Defendants, who are jointly and severally liable for the damages, but would ultimately harm Plaintiffs, whose welfare is linked to the region's fruit-growing industry. *Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1347 (5th Cir. 1985).

Finally, it is worth noting that the jury awarded two of the individually-named Plaintiffs actual damages with respect to the breach of contract claim. Thus, it was not impossible to try the actual damages portion of the proceedings. Plaintiffs deliberately chose not to seek actual damages in favor of the statutory damages, where the primary focus is not necessarily on compensating the individual class members, but rather to effectuate the purposes of the Act.

With these considerations in mind, the Court now addresses the question as to the appropriate amount of statutory damages that should be awarded to class members, based on the record before the Court.

---

Given that the statute permits the state to award damages for each violation, the potential penalty for this violation could have been in the hundreds of thousands. Likewise, the State found that Global unlawfully deducted Washington state income tax from 260 workers' pay. Thus, the State had the opportunity to assess $1000 for each worker for a total of $260,000.00, but chose to assess only $1000 in penalties. Additionally, the State found that Global failed to pay full wages to four bus drivers. Rather than assess $4000 in penalties, the State chose to assess $1000 for this violation.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 13**

**A.      Judge McDonald's Order**

Judge McDonald found that the Global Defendants violated FLCA and awarded statutory damages of $ 500 per plaintiff per violation.  In doing so, Judge McDonald cited to Wash. Rev. Code § 19.30.170(1), (2), which states:

> (1) After filing a notice of a claim with the director, in addition to any other penalty provided by law, any person aggrieved by a violation of this chapter or any rule adopted under this chapter may bring suit in any court of competent jurisdiction of the county in which the claim arose, or in which either the plaintiff or respondent resides, without regard to the amount in controversy and without regard to exhaustion of any alternative administrative remedies provided in this chapter. No such action may be commenced later than three years after the date of the violation giving rise to the right of action. In any such action the court may award to the prevailing party, in addition to costs and disbursements, reasonable attorney fees at trial and appeal.
>
> (2) In any action under subsection (1) of this section, if the court finds that the respondent has violated this chapter or any rule adopted under this chapter, it may award damages up to and including an amount equal to the amount of actual damages, or statutory damages of five hundred dollars per plaintiff per violation, whichever is greater, or other equitable relief.

Wash. Rev. Code § 19.30.170(1),(2).

Judge McDonald interpreted these provisions to support an automatic $500.00 award for each violation, separate awards for multiple violations of a subsection, no cap for class action awards, and attorneys' fees and costs.  Ct. Rec. 507 p. 29, n.6.

As noted above, the Court reviewed the Ninth Circuit case law and concluded that rather than provide for mandatory damages, the statute permits the Court to exercise its discretion in awarding statutory damages.  The Court concluded that a bench trial on the appropriate amount of damages would permit this Court to exercise its discretion in awarding the appropriate amount of damages.

The Court did not address whether it would reconsider the question as to whether Plaintiffs would have to show that the class members were aggrieved before they can obtain statutory damages.  Clearly Judge McDonald found that the class members had demonstrated that they were aggrieved because, according to

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 14**

subsection (1), a person who was not aggrieved would not be entitled to statutory damages.

In their Motion for Reconsideration, the Grower Defendants argued that statutory damages were not mandatory, but did not specifically argue that the judgment should be vacated because the class members were not aggrieved. The Grower Defendants now argue that for some violations, however, statutory damages are not warranted because Plaintiffs cannot show that they were aggrieved.

Just as the Court accepts Judge McDonald's findings that violations occurred, the Court will accept Judge McDonald's conclusion that class members were aggrieved. Judge McDonald and the jury found that Plaintiffs had met their burden of showing class-wide damages. Plaintiffs are asking for liquidated statutory damages for class-wide claims. As such, the Court does not need to make specific factual calculations of actual injury. *See Six (6) Mexican Workers*, 904 F.2d at 1310; *see also Montelongo v. Meese*, 803 F.2d 1341, 1352 (5th Cir. 1986) (rejecting argument that individual class members are not entitled to damages because they had either forgotten or never known the details of the job offers).

**B.    Evidence to be Considered**

The parties agreed that the available evidence for the damages phase consists of the evidence that was introduced at summary judgment and trial. The Global Defendants asserted that Plaintiffs should be required to present a separate evidentiary record for the damages phase because irrelevant and inadmissible evidence should not be considered by the Court and due process demands that Defendants be able to specifically contest any and all of the evidence supporting Plaintiffs' alleged damages as well as class membership.

The Court disagrees. The Court sat through the jury trial. It can filter out the irrelevant and inadmissible evidence. Likewise, the complete summary judgment record is also before the Court. The Global Defendants' due process

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 15**

rights were waived when they failed to respond to Plaintiffs' summary judgment motions. Moreover, the Global Defendants fully participated in the jury trial, including challenging the admission of evidence based on relevancy and other grounds. Plaintiffs are not required to present to the Court a separate evidentiary record in support of their request for statutory damages.

**C. Analysis**

The *Six (6) Mexican Workers* factors require the Court to consider the circumstances in each case. The circumstances in this case are unique. Here, the jury and the Court found that Global Horizons deliberately took steps to discourage local workers from obtaining work at Global Horizons. And in doing so, it violated various provisions of the Washington Farm Labor Contractors Act. But, it is clear that the underlying harm was the failure to hire the local workers in favor of hiring the H-2A workers. A corollary to that harm is the finding by Judge McDonald that Global committed a number of technical violations of FLCA.

The ten FLCA violations found by Judge McDonald can be divided into four separate categories: recruitment violations, working arrangement violations, failing to pay wages; and failing to pay adequate pay statements.

**1.    Recruitment Violations**

**(a)    Failure to Provide Required Disclosures**

Judge McDonald found that Global failed to provide U.S. Resident Workers with the disclosures on the form required by the Washington Department of Labor and failed to provide the statement in Spanish.

Defendants argue that, notwithstanding the fact that the correct form was not used, Plaintiffs received all of the required information from the two-page summary that Worksource provided the applicant. Defendants allege that the summary contained information about the wages offered, the date, duration and

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 16**

description of the available employment.[8]  Defendants assert that a WorkSource employee would explain to each applicant, in Spanish, information about the Clearance Order for which the person was applying.

The difficulty in assessing the harmed caused by the failure to use the required form is that the neither party provided Judge McDonald with the required form.[9]  Moreover, there is nothing in the record to establish exactly what information contained in the Clearance Order was presented to the applicant.  The Clearance Order and attachments constitute a 17-page technical document. Providing the Clearance Order is not the same as providing a document that clearly and simply states the rate of pay, whether bonuses will be provided, whether personal loans will be provided, whether transportation, housing, health and day care services will be provided, the employment conditions, whether any equipment or clothing is required for the job, the owner of the operations, the working conditions and whether there is an arrangement with a farm labor contractor.  *See* Wash. Rev. Code § 19.30.110(7).  Moreover, because this form was mandated by the State of Washington, farm laborers would be familiar with this form and the information contained on the form.  Use of a consistent form would facilitate the worker's understanding of the job benefits and requirements.  The Clearance Order was not an adequate substitute for the failure to use the required form.  Moreover, the Court finds that throughout the recruitment process, Global deliberately tried to

---

[8]This two-page summary was never introduced in the record.

[9]At the bench trial, Plaintiffs introduced a copy of the required form. Additionally, the Court was able to locate an "Agreement - Farm Labor Contractor and Workers" from the Washington Department of Labor & Industries.  *See* http://www.lni.wa.gov/Forms/pdf/700046a0.pdf (English) and http://www.lni.wa.gov/Forms/pdf/700046z0.pdf (Spanish) (last visited Feb. 26, 2009).  It appears that this form was updated on March, 2008.  This form is consistent with the requirements of Wash. Rev. Code § 19.30.110(7).

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 17**

under-inform the prospective local workers in an attempt to discourage them from applying for work with Global.

The state of Washington did not find a violation of Wash. Rev. Code § 19.30.110(7) and did not assess any penalties for the failure to provide the required form.

The Court concludes that although this is a technical violation, the failure to provide the information on the required form merits an award of $100.00 per class member. The Court awards $39,700.00 to the Denied Work subclass; $10,700.00 to the Green Acre subclass; and $14,600.00 to the Valley Fruit Subclass.

### (b)    Providing False and Misleading Information about the Terms of Employment

Judge McDonald found that Global failed to inform the applicants of the availability of the transportation benefits that were promised in the Clearance Orders and failed to inform the applicants that they would have to meet specific production standards. Judge McDonald found that Global imposed specific production standards on the workers and fired workers for failing to meet those standards.

Wash. Rev. Code § 19.30.120(2) provides:

No person acting as a farm labor contractor shall:

(2) Make or cause to be made, to any person, any false, fraudulent, or misleading representation, or publish or circulate or cause to be published or circulated any false, fraudulent, or misleading information concerning the terms or conditions or existence of employment at any place or places, or by any person or persons, or of any individual or individuals.

### (i)    Transportation Benefits

Plaintiffs assert that rather than inform the applicants that they could obtain transportation to the work site, Global weeded out prospective employees who did not have their own transportation. Plaintiffs did not provide any specific instances of where a person was not offered a job because they did not have transportation, or any testimony that had they known about the transportation service as set forth

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 18**

in the Clearance Order, the employees would have utilized the service.[10]  On the other hand, there was testimony that a worker tried to board a bus taking the Thai workers to the Green Acres Orchard but was told that the bus was only available for the Thai workers.

Traditionally, agricultural workers are some of the lowest paid workers.  The Court finds that if offered, many of the workers would have accepted transportation benefits.  Moreover, the Court finds that the failure to inform the workers regarding the transportation benefits that were set forth in the Clearance Order was a deliberate attempt on the part of Global to misinform the local workers and discourage them from obtaining work at Global.

The state of Washington did not address this conduct and therefore did not assess a penalty for the failure to accurately inform the employees regarding transportation benefits.

(ii)    <strong>Production Standards</strong>

Judge McDonald found that Defendants provided false and misleading information regarding the production standards.  As explained in the hearing, however, the testimony presented at trial indicated that, in the context of orchards, production standards can change daily, depending on the weather, the time of year, the type of crop, the type of work, the size and age of the trees, etc. and that it would be nearly impossible to set forth the type of production standards in the Clearance Order that Plaintiffs argue should have been provided.

The state of Washington concluded that Global Horizons applied a productivity standard that was not contained in the January 20, 2005 H-2A application, but did not assess a penalty based on this conduct.

The Court does not believe a separate award of statutory damages for failing to provide productions standards in the Clearance Order is necessary or warranted.

---

[10]The nature of the transportation benefits provided in the Clearance Order consisted of transportation from the employer-provided housing to the fields.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 19**

Nevertheless, the Court concludes Global's conduct in providing false and misleading information during the recruitment process regarding transportation benefits warrants an award of $100.00 per class member. The Court awards $39,700.00 to the Denied Work subclass; $10,700.00 to the Green Acre subclass; and $14,600.00 to the Valley Fruit Subclass.

## 2.    Working Arrangement Violations

Judge McDonald found that Global violated Wash. Rev. Code § 19.30.110(5), which provides:

Every person acting as a farm labor contractor shall:

5) Comply with the terms and provisions of all legal and valid agreements and contracts entered into between the contractor in the capacity of a farm labor contractor and third persons.

Judge McDonald found that this provision was violated in two ways: (1) by failing to provide written reprimands upon a second violation of a work rule; and (2) by employing H-2A workers without approval from the Department of Labor.

## (a)    Employing H-2A Workers

The theory of the harm from employing H-2A workers without approval of the Department of Labor is the same as the failure to provide work. Presumably, if the H-2A workers were not used, local workers would have been provided the work. This will be addressed below. There is no private cause of action under the H-2A statutes and regulations. The Court declines to award separate statutory damages under FLCA for violations of the H-2A statutes and regulations, but will consider the fact that H-2A workers were hired in lieu of local workers when determining the appropriate amount of damages for the failure to employ and the discharging and laying off of workers.

The state of Washington assessed a $1000 penalty for failing to notify the U.S. Department of Labor under H-2A requirements when Global moved workers from one location to another and did not house their workers in locations identified in their application. An additional $1000 penalty was assessed for

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 20**

misrepresentations in documents provided to the Department of Labor & Industries of the number of workers that were to be brought to work in Washington.

(b)    <strong>Failure to Provide Written Reprimands</strong>

The evidence presented at trial was that persons were given verbal reprimands regarding discipline, but not written reprimands.  Jose Cuevas and Ignacio Ramos both testified that they gave workers verbal reprimands but never provided written warnings as required by the Clearance Order.

The State of Washington did not address this conduct and therefore did not assess a penalty for the failure to provide written reprimands.

The Court concludes that $10.00 per class member is an appropriate amount of statutory damages  for Global's failure to provide written reprimands as required by the Clearance Order.  The Court awards $1070.00 to the Green Acres subclass and $1460.00 to the Valley Fruit subclass.

<strong>3</strong>.    <strong>Failure to Pay Wages Due</strong>

(a)    <strong>Unlawful Deduction of State Income Tax</strong>

At summary judgment, Global admitted that, for a limited time and due to clerical error, it deducted from the pay of certain Green Acre and Valley Fruit subclass members taxes that were not required by the state of Washington.  The employees were reimbursed for the deductions in 2005.  The total amount withheld were $4,386.51.  Judge McDonald found questions of fact with regard to whether the withholding of the wages was willful.  No evidence was presented at trial to support a finding that the withholding of the Washington state tax was anything but a clerical error.

The state of Washington assessed a $1000.00 penalty for the improper deductions for taxes not required by the State and ordered the reimbursement of the withheld amount.

Under Washington law, where a employee demonstrates that wages have been willfully withheld, damages are equal double the amount of wages that was

<strong>FINDINGS OF FACT AND CONCLUSIONS OF LAW</strong> ~ 21

withheld.  The Court finds that this is an appropriate criteria from which to award statutory damages for the unlawful deduction of Washington state income tax.  The Court awards $8773.02 in statutory damages for this violation.  This amount will be allocated to the 72 Green Acre subclass members and 49 Valley Fruit subclass members set forth in Plaintiff's Exhibit J.

(b)     **Failure to Pay Piece Rate**

Judge McDonald also found that twenty-four workers at Valley Fruit were entitled to be paid the piece rate of $19.00 per bin in the pear harvest in 2004 and that it was undisputed that the workers were not, in fact, paid a piece rate.  Instead, workers were paid an hourly rate in which they earned almost $70.00 per day, which computes to be more than they would have received at the approved piece rate.  Plaintiffs did not present any evidence to Judge McDonald or during the trial that the workers' productivity would have increased significantly to earn more by piece rate than they actually received.  These twenty-four workers picked pears for two days.

Even so, the failure to pay the bin rate represents willful conduct on the part of Global, which is evidence by the fact that Global initially filed an application for a Clearance Order that did not include a bin rate.  The Department of Labor rejected the application for the Clearance Order, stating that Global needed to include a bin rate.  Global eventually acquiesced and included a bin rate in a resubmitted application for a Clearance Order.  Nevertheless, Global failed to notify the workers that a bin rate was included in the Clearance Order.

The Court awards $100 to the twenty-four workers identified in Plaintiffs' Exhibit R.

**4.     Failure to Provide Adequate Written Pay Statements**

(a)     **Failure to Itemize Piece Rates Earned**

Judge McDonald found that Global failed to itemize the pieces picked on the pay statement when work was paid on a piece rate basis at Valley Fruit in 2004.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 22**

Pursuant to Wash. Rev. Code § 19.30.110(8):

Every person acting as a farm labor contractor shall:

> (8) Furnish to the worker each time the worker receives a compensation payment from the farm labor contractor, a written statement itemizing the total payment and the amount and purpose of each deduction therefrom, hours worked, rate of pay, and pieces done if the work is done on a piece rate basis, and if the work is done under the Service Contract Act (41 U.S.C. Secs. 351 through 401) or related federal or state law, a written statement of any applicable prevailing wage.

This violation affected 99 Valley Fruit subclass workers who worked in the cherry harvest.

The evidence indicated that Mr. Verbrugge unilaterally offered the piece rate to the workers in the field, after which he contacted Global. Global's accounting system was not equipped to handle the piece rate and this was the reason why the piece rate was not included in the pay statements. There was no evidence that any of the workers complained to Global regarding the lack of piece rate. There was no evidence that Global failed to properly pay the workers for the piece units that were picked by the workers. At best, this was an oversight caused by the exigent circumstances of ripening fruit and the threat of losing labor to pick the fruit.

The Court awards $10.00 to the 99 Valley Fruit subclass workers identified in Plaintiffs' Exhibit Q.

### (b) Failure to Provide Employers Name, Address and Telephone Number on Pay Statement

In addressing statutory damages, Judge McDonald indicated that one of the violations was failing to provide adequate pay statements in violation of Wash. Admin. Code 296-131-015. In their briefing, Plaintiffs argued that Defendants were required to provide pay statements that identified the pay period and include the employer's name, address, and telephone number, pursuant to Wash. Admin. Code 296-131-015.

FLCA does not require the employer's name, address, and telephone number, rather this is required by the Washington regulations. As noted above, the

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 23**

state of Washington sought $1000.00 in penalties for this violation. The Court concludes that this amount provides an appropriate gauge to access the need to deter and to adequately compensate Plaintiffs for this violation. Plaintiffs did not introduce any evidence that any class member was prejudiced by the failure to provide the information on the pay statement. It is undisputed that this information was provided on the pay check. There was no evidence presented that any of the class members complained to Global that its name and address were not provided on the pay statement, or demanded that this information be provided to the workers.

The state of Washington assessed a $1000.00 for the failure to provide all information required on the statement of earnings to the workers. It found that Global failed to provide the its address, telephone number, beginning and ending dates of the pay period, and failed to include rate of pay for "other" hours.

The Court awards $10.00 to each member of the Green Acres and Valley Fruit subclasses. The Court awards $1070.00 to the Green Acres subclass and $1460.00 to the Valley Fruit subclass.

**5.    Failure to Provide Work**

The jury found that Defendants failed to employ the Denied Work Subclass and laid off or fired the members of the Green Acre and Valley Fruit Subclass in violation of the Clearance Order. Plaintiffs' theory was that Global Horizons deliberately took steps to discourage the local workers to work for Global Horizons because Global wanted to utilize Thai workers. The Court also accepted this theory at trial. Clearly, this was the most egregious violation.

The evidence at trial, however, was that the WorkSource accepted and referred more applicants than were available jobs. In reviewing the evidence presented at trial and found by Judge McDonald, the most H-2A workers that were employed at any given time was 172 Thai workers (Ct. Rec. 507, p. 17). This represents the number of jobs that would have been available to the local workers

if the Thai workers would not have been utilized.  In determining the appropriate amount of statutory damages, the Court concludes that multiplying $500.00 times this number is a good starting point for determining the amount of statutory damages to award the class members.  This amount is $86,000.00.  If this amount is divided by the total number of class members (650), each class member would receive approximately $132.00.  The Court finds that an award of $150.00 per class member is an appropriate amount to meet the goals of compensation and deterrence.  The evidence is undisputed that not every person who applied for a job with Global would have been hired even if Global chose not to utilize the Thai workers.  Even so, an award for $150.00 for each Denied Work - Offered subclass member, and each Valley Fruit and Green Acres subclass member is appropriate. The Court awards $59,550.00 to the Denied Work subclass, $16,050.00 to the Green Acres subclass; and $21,900.00 to the Valley Fruit subclass.

**D.    Conclusion**

The Court awards the following statutory damages:

| Denied Work Subclass<br>Violation | No. of Members | Individual Award | Total |
|---|---|---|---|
| Failure to Provide Required Disclosures | 397 | $100 | $39,700 |
| Providing False and Misleading Information: transportation benefits and production standards | 397 | $100 | $39,700 |
| Employing H-2A Workers | 397 | 0 | 0 |
| Failing to Employ | 397 | $150 | $59,550 |
| **Total** | 397 | $350 | $138,950 |

| Green Acre Subclass<br>Violation | No. of Members | Individual Award | Total |
|---|---|---|---|
| Failure to Provide Required Disclosures | 107 | $100 | $10,700 |
| Providing False and Misleading Information: transportation benefits and production standards | 107 | $100 | $10,700 |
| Employing H-2A Workers | 107 | 0 | 0 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 25**

| Laying Off in violation of Clearance Order | 107 | $150 | $16,050 |
| Failure to Provide Written Reprimands | 107 | $10 | $1,070 |
| Failure to Provide Adequate Pay Statements - name and address | 107 | $10 | $1,070 |
| Failure to Pay Wages Due - Deducting Washington State Tax | 72 | [11] | [12] |
| Total | | $370 | $39,590 |

| Valley Fruit Subclass Violation | No. of Members | Individual Award | Total |
|---|---|---|---|
| Failure to Provide Required Disclosures | 146 | $100 | $10,700 |
| Providing False and Misleading Information: transportation benefits and production standards | 146 | $100 | $10,700 |
| Employing H-2A Workers | 146 | 0 | 0 |
| Laying Off in violation of Clearance Order | 146 | $150 | $21,900 |
| Failure to Provide Written Reprimands | 146 | $10 | $1,460 |
| Failure to Provide Adequate Pay Statements - name and address | 146 | $10 | $1,460 |
| Failure to Provide Adequate Pay Statements - itemization | 99 | $10 | $990 |

[11]The Court is unable to determine the exact number of Green Acre Subclass members who were affected by this violation. The total amount of the damages award is $8773.02, which will be divided between the two subclass members identified in Plaintiffs' Exhibit J.

[12]See note 9.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 26**

| | | 13 | 14 |
|---|---|---|---|
| Failure to Pay Wages Due - Deducting Washington State Tax | 49 | | |
| Failure to Pay Wages Due - Not paying Approved Bin Rate of $19 in Pear Harvest | 24 | $100 | $2,400 |
| Total | | $480 | $49,610 |

The Court has considered the *Six Mexican Workers* factors as well as the unique circumstances of this case and determined that statutory damages in the amount set forth above represent an appropriate amount of damages to compensate Plaintiffs, deter Defendants, and encourage Plaintiffs to enforce their rights.

FLCA, which was modeled after FLCRA, was enacted to protect the migrant worker population. Indeed, previous cases documented the horrors that migrant workers experienced at the hand of unscrupulous farm labor contractors. *See Martinez v. Mendoza*, 595 F.Supp.2d 923 (N.D. Ind. 2009) (plaintiffs traveled from Texas to Indiana on a bus that was not safe and in inadequate housing); *Velasquez v. Khan*, 2005 WL 1683768 (E.D. Cal. 2005) (plaintiffs traveled from Arizona to California, housing that was provided was in grossly substandard conditions); *Castillo v. Case Farms of Ohio, Inc.*, 96 F.Supp. 2d 578 (W.D. Tex. 1999) (plaintiffs traveled from Texas to Ohio, terms and conditions of employment, transportation, and housing did not coincide with promises made to induce them to travel to Ohio).

Here, the class members in this case are not traditional migrant workers. Rather, the class is local workers who resided in the Yakima Valley area and were

---

[13]The Court is unable to determine the exact number of Valley Fruit Subclass members who were affected by this violation. The total amount of the damages award is $8773.02, which will be divided between the two subclass members identified in Plaintiffs' Exhibit J.

[14]See note 13.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 27**

1  seeking work.  Notably, there is nothing in the record to suggest that the local

2  workers had traveled to the region to obtain work, nor did they expect to receive

3  housing or subsistence while employed with Global Horizon.  These differences

4  are important in determining the appropriate amount of statutory damages.  The

5  Court is also mindful that the jury awarded Plaintiffs punitive damages for failing

6  to provide work or for firing, based on race.  The conduct the jury considered in

7  awarding the punitive damages is the same conduct that is at issue with respect to

8  statutory damages.

9       The Court awards approximately $235,000.00 in statutory damages.  The

10 Court finds that this amount is sufficient to deter future violations and encourage

11 enforcement of the Act.  The individual class members will be receiving $350.00

12 or more in statutory damages.  The Court finds this amount to be adequate to

13 compensate the individual class members for any injury experienced as a result of

14 Global's wrongful conduct.

15             **INDIVIDUAL LIABILITY FOR THE GROWER DEFENDANTS**

16      Plaintiffs seek to hold Jim Morford and John Verbrugge personally liable for

17 their companies' use of an unlicensed farm labor contractor.  Previously, the Court

18 concluded that Defendant Mordechai Orien could not be held individually liable

19 for violations of FLCA (Ct. Rec. 863).  The Court concluded that in order to be

20 held liable under FLCA, a person must act as a farm labor contractor and, because

21 Plaintiffs did not argue that Orian personally acted as a farm labor contractor or

22 that he personally needed to obtain a license under FLCA, he could not be held

23 individually liable as a matter of law.

24      The analysis is somewhat different because the corporate Grower

25 Defendants are jointly and severally liable as a result of the corporation's use of the

26 services of an unlicensed farm labor contractor.  The provision at issue is Wash.

27 Rev. Code § 19.30.200, which provides, in part:

28             Any person who knowingly uses the services of an unlicensed
             farm labor contractor shall be personally, jointly, and severally liable

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 28**

with the person acting as a farm labor contractor to the same extent and in the same manner as provided in this chapter.

Plaintiffs argue that other state labor laws make officers liable with their corporations for violations of wage payment laws, and refer to Wash. Rev. Code § 49.52.020, which specifically states that "[a]ny employer or officer, vice principal or agent of any employer who [list of wrongful conduct] . . . shall be guilty of a misdemeanor."   There, however, the plain language of the statute specifically provides liability on the part of an employer or officer.  If anything, Plaintiffs' example supports the premise that liability under § 19.30.200 would not extend to the officers of a corporation who uses the services of an unlicensed farm labor contractor.  If the Washington legislation intended to hold officers liable, it could have clearly written the statute in a manner similar to § 49.52.020.  It did not.  As such, the Court is left with the plain language of the statute, which requires the person to use the services of an unlicensed farm labor contractor.  There is nothing in the record to suggest that Mr. Morford or Verbrugge personally used the services of an unlicensed farm labor contractor.  The Court declines to impose joint and several liability on these Defendants.

### INJUNCTIVE RELIEF

Plaintiffs seek a permanent injunction against Global Horizon to prevent it from operating as a farm labor contractor in Washington until the company obtains valid federal and state contracting licenses.  Plaintiffs request that any injunction remain in place until Global has paid in full all sums owing from this lawsuit and any other money judgments owed to farm workers they employed in Washington.  Plaintiffs also seek a permanent injunction against the Grower Defendants to enjoin them from using the services of an unlicensed farm labor contractor.

Wash. Rev. Code 19.30.180 provides:

> The director or any other person may bring suit in any court of competent jurisdiction to enjoin any person from using the services of an unlicensed farm labor contractor or to enjoin any person acting as a farm labor contractor in violation of this chapter, or any rule adopted under this chapter, from committing future violations. The court may

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 29**

award to the prevailing party costs and disbursements and a reasonable attorney fee.

Generally, when issuing an injunction, the Court is exercising its equitable powers. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In this case, however, the authority to issue the injunction is not necessarily a function of the Court's equitable powers, but is a statutorily-conferred power. Even so, the Court concludes that the proper test to apply is the traditional four-factor test recognized in *eBay, Inc. See id.* (applying test where party was seeking an injunction under the Patent Act). Therefore, in order to obtain a permanent injunction, Plaintiffs must demonstrate the following:

(1) they have suffered an irreparable injury;

(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

(3) that, considering the balance of hardships between plaintiffs and defendants, a remedy in equity is warranted; and

(4) that the public interest would not be dis-served by a permanent injunction.

*Id.* at 390; *see also Geertson Seed Farms v. Johanns*, 541 F.3d 938, 943 (9th Cir. 2008).

An injunction is an extraordinary remedy. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). "An injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.' " *Id.* The relief granted must not be "more burdensome than necessary to redress the complaining parties." *Bresgal v. Brock*, 843 F.2d 1163, 1169 (9th Cir. 1988). Moreover, under the teachings of *eBayInc.*, an injunction should not "automatically issue" when a FLCA violation is found. *See Geertson*, 541 F.3d at 944 (holding that traditional balancing test is appropriate and that an injunction is not automatic when a NEPA violation is found).

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 30**

Plaintiffs seek an injunction against both the Global Defendants and the Grower Defendants. Plaintiffs have failed to show that the extraordinary relief of a permanent injunction is warranted in this matter.

**(1)    Irreparable Harm**

Plaintiffs argue that they will suffer irreparable harm because the Global Defendants are unlikely to pay for past violations, and future violations would require multiple lawsuits and leave Plaintiffs in an untenable position.

The test is whether the parties will suffer irreparable harm if the injunction is not granted. Here, the record does not support a finding that it is likely that Global will commit further violations. Global has admitted to committing violations under FLCA. And there is evidence in the record that Global took steps to remedy past violations. For instance, although it did operate as an unlicensed farm labor contractor for a period of time, it is undisputed that it eventually obtained the Washington state license.

Likewise, Plaintiffs argue that the harm suffered by them would have been prevented if the Grower Defendant had not contracted with Global. This may be true but it does not support a finding of irreparable harm if the injunction would not be granted.

The Court does not find that the record supports an inference that Global or the Grower Defendants are likely to violate the FLCA in the future.

**(2)    Adequate Remedy at Law**

The FLCA provides for actual and statutory damages for violations of FLCA. Plaintiffs have not demonstrated that these damages are inadequate.

**(3)    Balance of Hardships**

Plaintiffs urge the Court to find that Global is likely to violate the FLCA in the future, which presumably would tip the balance of hardship in favor of Plaintiffs. Likewise, the Grower Defendants' complicity in Global's unlawful objectives to replace local workers with H-2A workers tips the balance in

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 31**

1  Plaintiffs' favor.

2      Plaintiffs' arguments do not demonstrate that the balance of hardships tip in

3  favor of Plaintiffs.

4      **(4)     Interest of the Public**

5      Plaintiffs argue that there is no public interest in allowing Global to operate

6  as a farm labor contractor in the state of Washington unless farm workers have

7  been made whole regarding past abuses.  Plaintiffs have not provided any case law

8  that would give the Court the authority to do what Plaintiffs are asking the Court to

9  do.

10     The Court finds that Plaintiffs have not met their burden of showing that an

11 injunction is necessary or appropriate in this case.

12                    PROOF OF IMMIGRATION STATUS

13     The question of whether the class members would have to prove

14 immigration status in order to recover actual or statutory damages permeated

15 throughout the proceedings.  The Court declined to address the issue as it related to

16 damages based on the summary judgment motion, but in a prior order indicated

17 that proof of immigration status was going to be required for those persons who

18 sought damages under the claims proven at trial.  At the time of making that

19 statement, the Court presumed that Plaintiffs would be seeking actual damages.

20     In response to the Court's statement, Plaintiffs filed a motion asking the

21 Court to clarify its ruling (Ct. Rec. 868).  In ruling on Plaintiffs' motion, the Court

22 concluded that the relationship between the claims decided on summary judgment

23 and the claims decided by the jury needed to be analyzed in the context of

24 Plaintiff's anticipated damage presentation for each claim for which liability had

25 been established (Ct. Rec. 883).  Specifically, the Court stated, "whether and how

26 much an illegal alien can recover for violations of FLCA will depend on the

27 circumstances of the alien and the nature and scope of the violation."

28     Upon further reflection, the Court makes the following observations.  The

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** ~ 32

representative Plaintiffs have established that they were legally eligible to work.
There is no evidence to the contrary in the record.  Similarly, there is no evidence
in the record that absent class members were not legally eligible to work, just as
there is no evidence in the record that absent class members were not able to meet
the physical requirements of the Clearance Order.  Therefore, the Court finds that
absent class members are eligible to work.

Moreover, denied work class members only have to show that they were
offered employment to meet their eligibility for class membership.  Global made
offers prior to verifying immigration status.  Global was required to do so to avoid
possible exposure to charges of discrimination.  Since Global was not required to
verify authorization to work prior to the Denied Work subclass members actually
starting work, the Court declines to impose verification requirements to recover
statutory damages for FLCA violations.  A class member would not have been
required to show proof of authorization to work until they commenced work–an
opportunity Global denied them by failing to provide work as promised.

The Court is also concerned that immigration status is an issue in this case
only as a result of an unspoken perception that persons with Hispanic last names
are not eligible for work.  The Court declines to perpetuate any stereotyping of the
local Hispanic population by assuming that persons with Hispanic surnames who
applied for work with Global are not eligible to work.

Given that Plaintiffs are no longer seeking actual damages, the Court finds
that the Denied Work subclass will not have to show proof of eligibility to work in
order to recover statutory damages.  The purpose of statutory damages is to
compensate, deter and encourage persons to enforce their rights under the statute.
Plaintiffs were aggrieved irrespective of their eligibility to work.  As such, proof of
eligibility to work is not necessary in order to receive statutory damages.

### DISTRIBUTION OF PUNITIVE DAMAGES

The jury awarded punitive damages to each of the three subclasses for

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 33

violating 42 U.S.C. § 1981.  For the reasons stated above, the Court concludes that members of the Denied Work subclass are entitled to share in the award of punitive damages without proving they were authorized to work.

Plaintiffs ask that the Court distribute the punitive damages on a pro-rata basis to all subclass members.  Here, it would be difficult to determine the comparative value of an individual class member's lost opportunity and suffering relative to the other class members as a result of Global's discriminatory conduct. The Court adopts Plaintiffs' request to distribute the punitive damages award among subclass members on a pro rata basis.

### PROPOSED COURSE OF ACTION

In Court Record 901, the parties agreed that all class members will need to submit claim forms and agreed to a ninety-day period for class members to submit their claim forms.  As set forth above, class members will not be required to verify his or her entitlement to any of the damages.  Thus, there is no need to appoint a claims administrator.  Instead, the Court finds that it is appropriate for  Plaintiffs' counsel to administer the claims process.  Plaintiffs are directed to submit a proposed plan regarding the claims process to the Court, consistent with this Order.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiffs' Motion in Support of Award of FLCA Statutory Damages (Ct. Rec. 761) is **GRANTED**.

2.    Plaintiffs' Motion to Admit Evidence; Motion to Quash Subpoenas (Ct. Rec. 1029) is **GRANTED**, pursuant to the Court's oral ruling.

3.    Plaintiffs' Motion to Expedite; Motion for Leave to File Excess Pages (Ct. Rec. 1066) is **GRANTED**.

4.    Within 10 days from the date of this Order, Plaintiffs are directed to submit a proposed plan regarding the claims process to the Court.  Defendants can file a response according to the Local Rules.

5.    A telephonic hearing on Plaintiffs' proposed plan is set for **May 21,**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW** ~ 34

**2009, at 9:30 a.m.** Counsel are directed to dial the Court conference line, (509) 458-6380, to participate in the hearing.

     **IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and to provide copies to counsel.

     **DATED** this 15th day of April, 2009.

*s/ Robert H. Whaley*

ROBERT H. WHALEY
Chief United States District Court

Q:\CIVIL\2005\Perez-Farias, et al\FFCL3.wpd

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 35**